Bette REED, Trustee, Petitioner,

v.

W. C. WYLIE et ux., Respondents.

No. B–6184.

Supreme Court of Texas.

July 8, 1977.

Dissenting Opinions May 25, 1977, July 8, 1977.

Rehearing Denied July 27, 1977.

W. A. Keils, Jr., Teague, for petitioner.

Life & Bolding, Jack T. Life, Athens, Strasburger, Price, Kelton, Martin & Unis, Leo J. Hoffman, Dallas, for respondents.

## ON MOTION FOR REHEARING

REAVLEY, Justice.

The judgment of the Court of Civil Appeals was affirmed by our judgment on May 25, 1977. The motion for rehearing of Bette Reed, Trustee, is hereby overruled, but the opinion of May 25 is withdrawn and the following opinion delivered in its stead.

The ultimate question in this case is whether a 1950 deed, which reserved to the grantor one-fourth interest "in and to all oil, gas and other minerals on and under the land and premises herein described and conveyed," reserved one-fourth of the interest in coal and lignite. The trial court rendered a summary judgment in favor of the owner of the granted surface estate, but the Court of Civil Appeals held that the proof did not support a summary judgment and remanded the case for trial. 538 S.W.2d 186. We agree with the Court of Civil Appeals that the summary judgment was unwarranted. We also agree that *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971) rules the ultimate issue of the case, but questions raised in the lower courts require that we make certain the effect of *Acker v. Guinn* before the case proceeds further.

By a deed dated September 30, 1950 W. C. Wylie and wife, Iva Jack Wylie, conveyed 223.385 acres of land in Freestone County to James F. Baker. That deed contained the following reservation:

In addition to the above and foregoing exception there is hereby excepted and reserved to the Grantors herein a one-fourth (¼) undivided interest in and to all oil, gas and other minerals on and under the land and premises herein described and conveyed; and it is hereby expressly agreed and understood that Grantors herein, their heirs and assigns shall have, and they hereby have the right of ingress and egress for the sole and only purpose of mining and operating for oil, gas and all other minerals, on and under said land, and to produce, mine, save and take care of said products, and to take all usual, necessary and convenient means for working, preparing and removing said

minerals from under and away from said land and premises.

All of the interest conveyed by this deed to James F. Baker is now owned by Bette Reed, Trustee. The controversy is between Wylie and Reed as to whether Wylie retained the ownership of a one-fourth interest in coal and lignite in this land by virtue of the reservation in the 1950 deed as set forth above. Reed initiated this suit seeking a declaratory judgment and other relief.

By summary judgment the trial court declared that Reed is the owner of "all of the coal and lignite *that may be mined* and removed" from the land "*by open pit or strip mining methods.*" Reed, the surface owner, was apparently satisfied with that trial court judgment. Wylie, the owner of the mineral interest reserved by the quoted provision, appealed to the Court of Civil Appeals. The Justices of that Court delivered three opinions. The principal opinion addresses only the inadequacy of the summary judgment proof. A concurring opinion states that the surface owner Reed is not entitled to all lignite "that *may* be mined by open pit methods" but by the rule of *Acker v. Guinn* is entitled to "*only* the lignite that *must* be removed by such methods." 538 S.W.2d 189. A dissenting opinion states that the trial court's judgment should be affirmed but reformed to declare that surface owner Reed "is the owner of all of *the coal and lignite that must* be *mined and removed by open pit or strip mining.*" 538 S.W.2d 190.

Both parties sought writ of error in this Court. Reed contends that the trial court's summary judgment was correct and should be affirmed. Wylie argues that *Acker v. Guinn* does not apply to the particular reservation here or to the substance of lignite. Wylie also is critical of the rule announced in *Acker v. Guinn* and argues that at the proper time, or here if necessary, it should be reexamined.

Wylie is joined by amici curiae briefs in the criticism of *Acker v. Guinn.* We are told that the mineral owner should expect to get all of the mineral substances beneath the surface of the land and that the law would afford more certainty in these affairs of titles and business if the ownership of the minerals were vested in that owner subject to the usual limitation that he may not make an unreasonable use of the surface in the production or extraction of the minerals. We are inclined to believe that in most of these cases of unnamed minerals which later become very valuable, the subsequent controversy decides which party will be enriched by a substance which took no part in the intention or bargaining of the parties to the instrument of conveyance. Furthermore, we are not convinced that a rule of law which leaves questions of reasonable use of the surface, in each instance where mineral substances at or near the surface are to be produced, will lead to more certainty and less litigation. But whatever the merits or demerits of the holding in *Acker v. Guinn,* it was established by this Court six years ago, and those persons who have dealt in mineral and land interests during these years have assumed that what we said in that opinion would continue to be the Texas law. They assumed correctly. We reaffirm the holding and the writing in *Acker v. Guinn.*

### *The Rule of Acker v. Guinn*
### (464 S.W.2d 348, Tex.1971)

The question in *Acker v. Guinn* was whether an interest in iron ore passed to the grantee in a 1941 deed which conveyed "an undivided ½ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from" a tract of land in Cherokee County. The ore deposits in the area varied in thickness from a few inches to three or four feet and ranged in depths from outcropping on the surface to as much as fifty feet below the surface. There was no question but that the ore must be mined by the open pit or strip method. The Supreme Court affirmed a summary judgment in favor of the surface owner.

The Court wrote that a general intent rather than the specific thinking or intent of the parties should be the inquiry

where the instrument itself expresses no specific intent and it can only be supposed. The general intent of a grant or reservation of minerals by a fee owner was taken to be to create an estate in the mineral owner in the valuable substances usually removed from the ground by means of wells or mine-shafts but not by a method which would destroy or deplete the surface. The Court then declared that the following rule was "to be applied in determining whether an interest in the iron ore was conveyed by the deed" in that case:

> Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of "minerals" or "mineral rights" should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate.

The Court clearly based the disposition of *Acker v. Guinn* upon this rule and concluded that the conveyance of "all oil, gas and other minerals . . . that may be produced" included no interest in iron ore. The Court might have construed the conveyance to vest ownership of all ore in the mineral owner and allowed the problem of minerals lying near the surface to be met by limiting the implied easement of the mineral owner in the use of the surface for extraction or production of those minerals. That was not the holding in *Acker v. Guinn*. The *substance* which can be extracted only by substantial destruction of the surface is *owned* by the surface owner.

■ Here, as in *Acker v. Guinn*, the Court is construing a written instrument. If the instrument had specifically reserved coal and lignite, or if the conveyance had expressly reserved all minerals lying upon the surface or at any depth and including those minerals which may be produced by open pit or strip mining, the intention and effect of the instrument would have been clearly expressed. Furthermore, mineral ores and coal and lignite would ordinarily be reserved to the mineral interest owner by the terms of the Wylie to Baker instrument. That is not true, however, under *Acker v. Guinn*, if any part of the substance

lies so near the surface that to be extracted it "must be removed by methods that will, in effect, consume or deplete the surface estate." Because it is not expected that the parties to the instrument would have intended the destruction of the surface by the mineral owner in the absence of an expression of that intention, their use of "mineral" in the instrument is not construed to include the near surface substance. Once the instrument is construed to that effect, this particular substance—at whatever depth —is not a "mineral" for all purposes of the instrument.

*Acker v. Guinn* stands for the rule that a substance is not a "mineral" if substantial quantities of that substance lie so near the surface that the production will entail the stripping away and substantial destruction of the surface. That being the circumstance, and there being no contrary affirmative expression in the instrument, it controls the construction of the instrument as to the same substance at all depths.

■ It is improper therefore to declare that the surface owner is entitled to only so much of the substance as may be produced by strip mining or pit mining. We are not dividing the right to produce the substance; we are construing the instrument of conveyance to ascertain the ownership of the substance. Furthermore, the rule of construction does not favor the surface owner simply because it is shown that the substance "may" be produced by strip or pit mining. Instead, the surface estate owner must prove that, as of the date of the instrument being construed, if the substance near the surface had been extracted, that extraction would necessarily have consumed or depleted the land surface.

If the method of production required the removal of surface soil, it is immaterial that devices of restoration or reclamation were available. The thinking or intention or knowledge of the parties, or the lack of knowledge, would also be immaterial. The value of the substance, either on the date of the instrument or at any subsequent date, would not change the rule of construction announced in *Acker v. Guinn*.

*Disposition of Present Case*

It cannot be said that the quoted reservation in the 1950 deed affirmatively and fairly expresses an intention to reserve to Wylie an interest in any substance to be found in deposits at the surface level of the land. Wylie argues that by describing "minerals *on* and under the land" the reservation evidences an intention to include minerals belonging to both the surface and to the sub-surface. We do not agree, because the preposition "on" has traditionally been used in conveyancing to mean more than "on the surface of." See *Anderson & Kerr Drilling Co. v. Bruhlmeyer*, 134 Tex. 574, 136 S.W.2d 800, 805 (1940). It is suggested that there was shaft mining for lignite in this area of Texas prior to the date of the 1950 deed. This fact would have no effect if lignite were located at or near the surface of the land being conveyed and if in 1950 this shallow lignite would have been extracted only by a method that would have destroyed the surface of the land.

The record, however, does not prove the depth at which the lignite is located so as to show that the extraction of the lignite would have necessarily removed or destroyed the surface of the land. If lignite lies at the surface of the land, no further proof would be required to establish the title of Reed to the lignite as against Wylie's claim under the 1950 reservation. Reed, however, presented only an affidavit of a landman for a utility company who stated therein that the coal and lignite will be removed from this land by open pit mining and that it can be recovered only by this method. If this is the expression of an opinion as to mining methods used for lignite mining at certain depths, no qualifications of the affiant are shown, and it has been held by this Court that expert opinion testimony does not establish the fact as a matter of law in support of a motion for summary judgment. *Coward v. Gateway Nat. Bank of Beaumont*, 525 S.W.2d 857 (Tex.1975); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970); *Broussard v. Moon*, 431 S.W.2d 534 (Tex.1968).

Movant Reed was not entitled to summary judgment. The Court of Civil Appeals judgment, remanding the cause to the trial court, is affirmed.

GREENHILL, C. J., concurring.

DANIEL, J., dissenting, in which STEAKLEY, J., joins.

GREENHILL, Chief Justice, concurring.

I agree with much that the Court has written on motion for rehearing; and I particularly agree with the Court's conclusion that if lignite lies at the surface of the land, no further proof would be required to establish the title of Reed to the lignite as against Wylie's claim under the 1950 reservation.

I also agree that under our practice, there was a lack of summary judgment proof as to the location of the lignite; and so I agree with the judgment of remand by the Court.

I disagree, however, with an important holding of the Court which is expressed in its writing that the "surface estate owner must prove that, as of the date of the instrument being construed, if the substance near the surface had been extracted, that extraction would *necessarily* have consumed or depleted the land surface." [emphasis supplied]. By this statement, the Court requires, or at least infers, that the surface owner must show that *the only* method of extracting the mineral, at the time the instrument was executed, would have destroyed or substantially depleted the surface.

Although I agree that the instrument should be construed as of the date of its execution, I believe that the surface owner should prevail if he shows that *any* reasonable method of production would have destroyed or depleted the surface estate. The Court's more onerous burden is not required by the holding in *Acker v. Guinn*, and I believe that the less burdensome requirement I would impose is more in keeping with the reasoning in that case.

The rule of *Acker* is based on the Court's reasoning that, "It is not ordinarily contemplated, however, that the utility of the sur-

face for agricultural or grazing purposes will be destroyed or substantially impaired [by production of the minerals conveyed]." 464 S.W.2d at 352. The Court, therefore, stated the general rule to be that when the substance *must* be produced by surface-destroying methods, then the term "minerals" should not be construed to include that substance absent a showing of an intent to the contrary. Since it was undisputed that the only way to produce the iron ore in *Acker* was by open pit or strip mining, the Court concluded that as a matter of law the iron ore had not been conveyed in the mineral deed.

In *Acker v. Guinn*, therefore, this Court did not decide the question of whether a substance passes as a mineral if that substance may be, but does not have to be, mined by surface-destroying methods. In this case, however, the Court has decided that question. By holding or implying that the surface owner must show that *the only* method of producing the substance would have destroyed the surface, this Court here holds that if there were two methods of production at the time of the instrument, one of which would have destroyed the surface, and the other which would have not, then the substance is a "mineral" which was conveyed to the mineral owner.

Under the reasoning of *Acker*, I would reach a different conclusion. I would think that a surface owner would not intend to convey away an unnamed substance as a "mineral," when *any* reasonable method of producing that substance would destroy or deplete his estate. If strip mining was *a* reasonable method of recovery at the time of the execution of the instrument, then the surface owner could reasonably expect that method to be used to extract the substance; and he would not intend to convey it as a

"mineral" to the mineral owner. Therefore, I would hold that the surface owner need only show that a reasonable method of extraction would have entailed the destruction of the surface. Upon such a showing, the substance would be deemed not to be a "mineral"; and therefore it would not have passed to, or have been retained by, the mineral owner in the instrument.

DANIEL, J., dissents.

DANIEL, J., dissenting.

Dissenting Opinion of May 25, 1977.

I concur in the holding of the Court that lignite and coal were not included in the terms of the reservation of a portion of "all oil, gas and other minerals on and under the land" in question, but for additional and different reasons. First, I would apply the rule in *Acker v. Guinn*, 464 S.W.2d 348, (Tex.1971), to the near-surface coal and lignite which form a part of the surface. I would not extend it, however, to require factual or legal findings as to whether the substance *must* be mined only by surface-depleting processes.[1]

At the outset it should be noted that the plaintiff, Bette Reed, Trustee, sued the defendants, W. C. Wylie and wife, only for the title to "all of the coal and lignite that may be mined and removed by open pit or strip mining methods." Defendants raised the broad issue of title to deeper coal and lignite by asserting title to ¼ of all lignite and coal under the reservation in the deed from Wylie and wife to J. F. Baker and wife, predecessors in title to the plaintiff.

I would hold that *Acker v. Guinn* should be applied as to the near-surface coal and lignite which *may* be mined and removed from the premises by open pit or strip min-

1. Lignite is a low-rank, brownish-black coal that is intermediate in coalification between peat and bituminous coal. Potential statewide quantities at depths of less than 200 feet available to conventional surface mining are estimated at 10.4 billion tons. Deep-basin lignite, at depths of 200 feet to 5,000 feet below the surface, available through in situ recovery methods, brings the total known Texas lignite resources to more than 100 billion tons, with an equivalent on a BTU basis to 277 billion barrels of oil. Kaiser, *Texas Lignite: Near-Surface and Deep-Basin Resources*, University of Texas Bureau of Economic Geology 1974, Report No. 79, 1–3. It was one of the first mineral resources utilized by early settlers. See "mine de charbon terre" on map accompanying L'H'eritier, Le Champ D'Asile *Tableau Topographique et Historique du Texas* . . . (Paris, 1819).

ing methods without any requirement that the surface owner *must* prove that such method of extraction was the only method of removing this near-surface mineral at the time of the deed. In my opinion the intention of the parties in *Acker* was determined by this Court on the basis of the near-surface ore being so much a part of the surface estate that it, like gravel and limestone, "should be considered as belonging to the surface estate and not as a part of the minerals," rather than because its only method of production *must* consume or destroy the surface. The latter was only one test of ownership of the ore as part of the surface. The controlling principle was the iron ore's existence so near the surface that it formed a part thereof rather than a part of the "minerals."

Further, as to this near-surface ore as well as the deep-basin ore (200 to 5,000 feet below the surface), I would hold that coal and lignite were not included in the reservation of ¼ of "all oil, gas and other minerals," because neither was named along with oil and gas in the specific enumeration and neither falls within the "catch-all" general phrase "and other minerals." The latter obviously applies only to oil and gas related minerals which may be extracted through wells drilled into the subsurface of the soil. Not only is lignite coal a solid or hard mineral, different from oil and gas in various characteristics, but its near-surface (from 1 to 200 feet) production by open pit mining necessarily interferes with the other uses of the surface owner, and from this record it is apparent that underground shaft mining of both near-surface and the deep-basin (200 to 5,000 feet below the surface) would place a substantially different burden on the surface owner than the drilling and producing of oil, gas, sulphur and related minerals through well bores.[2]

The phrase "all oil, gas and other minerals" is a common term lifted from oil and gas lease forms used in this State as early as 1919. See Producer's and other forms in the Appendix to Thuss, *Texas Oil and Gas,* 2nd Ed. 1929, 453–478. The phrase is frequently used in fee "oil, gas and other mineral" reservations and conveyances. Petitioner Wylie, claiming that "other minerals" in his reservation covers coal, fails to cite any Texas case so holding, and I have found none. The majority of other jurisdictions which have considered the question have held that the phrase "all oil, gas and other minerals" does not include coal. *Besing v. Ohio Valley Coal Co.,* 155 Ind.App. 527, 293 N.E.2d 510 (1973); *Wulf v. Shultz,* 211 Kan. 724, 508 P.2d 896 (1973); *Panhandle Cooperative Royalty Co. v. Cunningham,* 495 P.2d 108 (Okl.1971). Cf. *Collins v. Coastal Petroleum Co.,* 118 So.2d 796 (Fla. App.1960).[3]

In *Wulf v. Shultz, supra,* the Supreme Court of Kansas was called upon to decide whether a mineral lease "grants to the lessee the right to extract coal, clay, gypsum, limestone . . . from the leasehold as well as oil and gas and their derivatives" when the lease is framed as a grant "to dig, drill, operate for and procure natural gas, petroleum and other mineral substances." The court concluded as follows:

"An examination of the lease leads us to but one conclusion: That the intention of the original parties to the lease was to restrict the scope of the lease to the exploration and production of oil, gas and related minerals.

\*　　\*　　\*　　\*　　\*　　\*

". . . Surely, if the parties had contemplated that the lease was to cover minerals other than oil and gas, or relat-

---

2. It was noted in *Acker v. Guinn, supra,* at p. 352, that hard-mineral mining conducted by the sinking of shafts or tunnels may also require destruction of the surface through the deposit of waste and debris removed to gain access to the ore, but the Court reserved that question, saying that it "will be considered when it arises." See Clark, Uranium Problems, 18 Tex. B.J. 505.

3. Cases to the contrary are found only in North Dakota, where statutory provisions have played an important part in the conclusions reached. See *Christman v. Emineth,* 212 N.W.2d 543 (N.D.1973); *Abbey v. State,* 202 N.W.2d 844 (N.D.1972); *MacMaster v. Onstad,* 86 N.W.2d 36 (N.D.1957); *Adams County v. Smith,* 74 N.D. 621, 23 N.W.2d 873 (1946).

ed substances, they would have mentioned them specifically in the lease."

After making the above holding, the court added that "the rule of *ejusdem generis* has been applied in cases similar to this both in Kansas and other jurisdictions," but it recognized that "courts generally have not limited their construction of leases and deeds containing the language 'oil, gas and other minerals' to an application of the rule of ejusdem generis," and the court did not do so in that case. Rather, it used the rule only to test and support its previous construction of a lease which was not contended to be ambiguous by either party.

The question in *Panhandle Cooperative Royalty Co. v. Cunningham, supra,* was whether a conveyance of an undivided interest "in and to all oil, gas and other minerals" included copper, silver, gold or any other types of metallic minerals or metallic ores lying in, upon or under the land covered by the conveyance. The Oklahoma Supreme Court answered in the negative, stating that the deed granted "the right to prospect for, discover, produce and own oil, gas and other minerals produced as oil or gas or produced as a component or constituent thereof, whether hydrocarbon or non-

hydrocarbon, and does not grant any other mineral or the right to produce any other mineral including copper, silver, gold or any other types of metallic ores or metallic minerals." Concluding that the intention of the parties was unambiguous, the court said: "We did not use '*ejusdem generis*' in our interpretation of this deed . . . ," although the rule was recognized as a proper and useful rule of construction to interpret words of doubtful meaning.[4]

In *Besing v. Ohio Valley Coal Co., Inc. of Kentucky,* 155 Ind.App. 527, 293 N.E.2d 510 (1973), the question was whether a deed covering "all gas and other minerals" included coal deposits underlying the land described in the deed. The Indiana court considered the phrase "and other minerals" to be ambiguous enough to permit extrinsic evidence which showed that the parties were primarily involved in the oil and gas business and that coal, although known to be present in the area, was not generally considered to be commercially recoverable. Besing, the grantee, cited *Acker v. Guinn, supra,* for the position that ". . . a general grant or reservation . . . of all minerals without qualifying language

---

4. Although not relied upon in this opinion, the rule *ejusdem generis* has been used on occasion in Texas cases dealing with mineral rights. See Justice Norvell's opinion in *Knight v. Chicago Corporation,* 183 S.W.2d 666 (Tex.Civ. App.) affirmed 144 Tex. 98, 188 S.W.2d 564 (1945), holding that the term "undivided interest," as used in the provision of a mineral lease would be given a restricted meaning rather than a generic meaning under the rule of *ejusdem generis.* See *Fleming Foundation v. Texaco,* 337 S.W.2d 846 (Tex.Civ.App.1960, writ ref'd n. r. e.), which applies the rule to a mineral reservation and holds that water is not a mineral included in the reservation. The rule was also applied in *Right of Way Oil Co. v. Gladys City Oil, Gas and Mfg. Co.,* 106 Tex. 94, 157 S.W. 737 (1913), holding that a conveyance of "all the timber, earth, stone and mineral" did not include oil. The rule is recognized as viable in Kuntz, *The Law of Oil and Gas,* § 13.3 (1962) wherein it is said: "If two or more minerals are enumerated which do have sufficient characteristics in common to provide the genus, then only minerals having such common characteristics will be included." See Hortenstine, *Coal Included in A Grant or Reservation of "Oil, Gas, or other Minerals"?,* 30 S.W.L.J. 481, 490–491 (1976), and Note, *"Has Ejusdem*

*Generis As Applied to Mineral Deeds Been Accepted in Texas"?,* 2 Tex.Tech L. Rev. 164 (1971). The doctrine of *ejusdem generis* is a general rule of statutory construction in Texas. See *Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269 (1944); *Fowler v. Hults,* 138 Tex. 636, 161 S.W.2d 478 (1942); *Shook v. All Texas Racing Assn.,* 128 Tex. 384, 97 S.W.2d 669 (1936); *Farmers' and Mechanics' Nat. Bank v. Hanks,* 104 Tex. 320, 137 S.W. 1120 (1911); *Clynch v. Bowers,* 164 S.W.2d 768 (Tex.Civ. App.1942, no writ); *Maryland Casualty Co. v. Scruggs,* 277 S.W. 768 (Tex.Civ.App.1925, writ ref'd); *Galveston, H. & H.R. Co. v. Anderson,* 229 S.W. 998 (Tex.Civ.App.1920, writ ref'd). It was applied also to the construction of a water contract in *Combs v. United Irrigation Co.,* 110 S.W.2d 1157 (Tex.Civ.App.1937, writ dism'd); to construction of a judgment in *Stevenson v. Record Pub. Co.,* 107 S.W.2d 462 (Tex.Civ.App. 1937, writ dism'd); interpretation of a deed restriction in *Bryan v. Darlington,* 207 S.W.2d 681 (Tex.Civ.App.1947, writ ref'd n.r.e.); and in construction of a will in *Erwin v. Steele,* 228 S.W.2d 882 (Tex.Civ.App.1950, writ ref'd n.r. e.).

. . . should be reasonably assumed that the parties intended to sever the entire mineral estate from the surface estate . . . ." The court answered this argument in its final conclusion as follows:

"In the instant case there was not a grant of all minerals without qualifying language, but rather a grant of 'other minerals' as qualified by the words 'oil, gas, and' immediately preceding 'other minerals'."

The Indiana court held that the term "and other minerals" was not meaningless, citing the lower court's finding:

"That as a natural adjunct to the production of oil or natural gas from a drilled oil and/or gas well, certain hydrocarbons which are known as casing head gasoline and casing head gas are also sometimes produced, and in addition to these hydrocarbons, on some occasions sulphur, helium, brine, and carbon dioxide are also naturally produced along with the production of oil and gas from a drilled oil or gas well."

Professor Kuntz, whose writings were partially followed in *Acker v. Guinn, supra,* addresses the above stated rule as follows:

". . . Since minerals may be severed piecemeal, i. e. both as to type and location, if the language of the instrument indicates a specific intention to do so, then that intention must be given full effect. For example, where the purposes of the grant indicate that a specific type of mineral was intended to be covered, or where there is an enumeration of certain minerals having characteristics in common followed by 'etc.', or where the description of the rights or removal are sufficiently specific to indicate that only a certain character of mineral was intended to be covered, then, in such cases, there is a specific intent present and it is expressed, although perhaps not with the desired clarity." [5]

Although coal of every type and nature is a mineral in the geologic sense, so is every other inorganic species having a definite chemical compound. The term in its general sense has such a broad significance that it could include "any constituent of the earth's crust." *Gladys City Oil, Gas & Mfg. Co. v. Right of Way Oil Co.,* 137 S.W. 171, 177 (Tex.Civ.App.1911), affirmed *Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg.,* 106 Tex. 94, 157 S.W. 737 (1913). The scientific or technical definition of minerals is so broad as to embrace not only metallic minerals, oil, gas, stone, sand, gravel and many other substances, but even the soil itself. *Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949). That is why cases have continued to arise as to what mineral substances are considered to be a portion of the surface when there has been a severance in general terms or in specific terms followed by general "and other minerals." A windfall of great proportions often occurs in favor of one who obtains title under unrestricted general terms, but my opinion refers only to the language before us in the Wylie reservation of ¼ of the "oil, gas and other minerals." I fully recognize that a reservation, conveyance, or lease in the terms of "all minerals of whatsoever kind or character," or similar unrestricted terms would include all minerals (with the exception of those which comprise a part of the surface). *Psencik v. Wessels,* 205 S.W.2d 658 (Tex. Civ.App.1947, writ ref'd).

Minerals have been a blessing to Texas, but the term has plagued our courts in efforts to determine what is covered by the term in various leases, reservations and conveyances. Much of this is because of the failure to enumerate specific minerals intended to be dealt with, especially when the parties probably had no subjective intent at all concerning minerals known or unknown to them at the time of their dealings.

There was little doubt about what was encompassed in the term "mines and minerals" when they were owned by the sovereign separate and apart from the soil under the civil law of Mexico, which remained in effect in Texas until 1866. The Mining Ordinances of May 22, 1783, promulgated for Mexico by the King of Spain, enumerat-

5. Kuntz, *The Law Relating to Oil and Gas in Wyoming,* 3 Wyo.L.J. 107, 114 (1949).

ed the minerals owned by the sovereign and subject to exploration as

> ". . . not only the mines of gold and silver, but also those of precious stones, copper, lead, tin, quicksilver, antimony, calmine, bismuth, rock salt and other stoney matter (fossils), be they ores or semi-minerals, *bitumen, and liquids (juices) of the earth* . . . ." Chapter 6, Section 22. (Rockwell's *Spanish and Mexican Law* 54–55).[6]

If the parties to the deed in question had intended that the mineral known as lignite or coal was to be included in the reservation, it would have been an easy matter to say so.[7] Despite the fact that this particular solid mineral had been mined in the area previously and was at the time under a lignite lease, Wylie, the reserving grantor, did not specify the substance in the reservation. As the deed was written, the reservation should be construed to cover the stated fraction of all oil, gas and other related minerals such as sulphur, helium, carbon dioxide, casing head gas, and distillate, but not lignite, coal, gold, silver or other solid minerals.

Although I reach the same result as the majority with respect to the particular tract under consideration, my reasoning as to non-inclusion of lignite and coal would apply to all leases, reservations, and conveyances which do not mention these substances and which rely solely on the meaning of "all oil, gas and other minerals," regardless of the depth of lignite or coal. As heretofore indicated, my opinion is limited to the construction of these particular words of the particular instrument under consideration.

With due respect, I question the soundness of the manner in which the majority reached its result and believe that it will lead to ownership uncertainties and litigation almost on a tract-by-tract basis whenever and wherever title to lignite coal is concerned. Land titles will be decided more by inspection for near-surface out-croppings and proof of the necessary method of producing the substance at the time of the deed or lease than by reading the instruments of conveyance or lease.

The rule of the majority would also lead to inequities. For instance, under the majority's reasoning a reservation, conveyance or lease of oil, gas and other minerals would include coal and lignite if nothing to the contrary was stated and if there was no coal or lignite near the surface, the production of which could be accomplished only by open pit strip mining on the date of the instrument being construed. To demonstrate the problem with this rule, let us suppose that two farmers owned adjoining tracts of 1,000 acres each. Both signed the same form of lease or conveyance of ⅝ths of "all of the oil, gas and other minerals in and under and that may be produced from said land," to the same grantee or lessee for the same consideration per acre. Assume that both had deep lignite or coal deposits which could be extracted through shaft mining. Assume further that farmer A had no coal or lignite near the surface of his 1,000 acres which could be produced by strip mining, but farmer B had fifty acres of his 1,000 acres on which lignite was close to the

**6.** Sovereign ownership remained in effect when Mexico achieved its independence from Spain in 1821 and when Texas won its independence from Mexico in 1836. When the Republic of Texas adopted the common law in 1840, it specifically provided that such adoption did not apply to "such laws as relate to the reservation of islands, salt lakes, licks and salt springs, mines and minerals of every description . . . ." 2 *Gammel's Laws of Texas* 177, 1840. It was not until the Constitution of 1866 that these mines and minerals were released to the owners of the soil. Article VII, Section 39, Constitution of 1866; 5 *Gammel's Laws of Texas* 880. *Cowan v. Hardeman,* 26 Tex. 217 (1862). The same provision was carried forward in the constitutions of 1869 and 1876. *State v. Parker,* 61 Tex. 265 (1884); *Cox v. Robison,* 105 Tex. 426, 150 S.W. 1149 (1912). See Hawkins, *El Sal del Rey* (1947).

**7.** Affidavits in the present case assert that the parties to the deed in question intended the reservation to include lignite, which was then under a recorded lignite lease, but there was no allegation of mutual mistake or effort to reform the instrument. Under the circumstances, we must construe it as written. See *Anderson & Kerr Drilling Co. v. Bruhlmeyer,* 134 Tex. 574, 136 S.W.2d 800 (1940).

surface and could be commercially produced only by depletion or consumption of the surface of that particular fifty acres.

Under the reasoning of the majority, the grantee or lessee would get from farmer A title not only to ⅞ths of his oil and gas but ⅞ths of his coal and lignite. From farmer B, his neighbor, the grantee or lessee would get ⅞ths of his oil and gas but none of his coal and lignite—not even any of the deep strata on 950 acres of the land which was not overlaid by lignite on or near the surface. This seems to be an instance of the tail wagging the dog. I suppose the rule would be the same even on a 50,000 acre tract, if any part of the tract had near-surface lignite or coal which could be mined only by open pit or strip mining at the time the instrument was executed. If the lease or deed is worded as in the present case, the title examiner cannot tell from the instrument whether the surface owner or the mineral lessee or grantee has title to the lignite and coal until certain factual determinations are made on the ground and possibly in the courtroom.

My reasoning may not please the mineral owners under "oil, gas and other mineral" conveyances or reservations, but at least it would provide a clear and simple test which can be made by reading the instrument; it is applicable to old as well as new instruments; and it does not depend on factual proof or changing times.

I especially disagree with that portion of the majority opinion which requires as a test of ownership a finding as to whether the near-surface lignite *must* be recovered by strip or open pit mining. The majority holds that in order to prevail, the surface estate owner must prove that, as of the date of the instrument being construed, the only method of extraction of the substance at near surface depths would have consumed or depleted the surface estate. It is this *must prove* requirement which places a

heavy burden on the surface owner and which will result in lawyers going to the courthouse more often to examine witnesses than to examine deed records.

This case is of such great importance that each of the parties has filed multiple briefs, and fourteen amicus briefs have been filed by prominent law firms from every section of the State. Ten of the amicus briefs support the surface owner in general, but neither they nor the petitioner advocate that the *Acker* near-surface rule be extended to cover the deeper deposits, and all of them object with vigor against any requirement of proof that surface-destructive processes *must* be proved as the only means of production in order for the surface owner to prevail as to shallow ore which is part of the surface. Legal issues should not be decided by numbers of briefs filed, but the content of the majority of the briefs is highly convincing on this point. Furthermore, it accords with Professor Kuntz's statement on this phase of the problem, as follows:

"A rule which requires consideration of the contemporaneous factual or legal setting would create the impossible situation of requiring the title examiner to inquire into the local folk-lore of the area or of requiring the examiner to retain a catalogued knowledge of the law as to dates of development. In either event, he could never be confident of his conclusion." [8]

I would reverse the judgment of the Court of Civil Appeals and remand the case to the trial court with instructions to enter a judgment in favor of plaintiff, Bette Reed, Trustee, in accordance with this opinion.

DANIEL, Justice, dissenting.

I would hold that the surface owner, Mrs. Reed, is entitled to judgment as a matter of

---

8. Kuntz, *The Law Relating to Oil and Gas in Wyoming*, 3 Wyo.L.J. 107, 114 (1949). For writings suggesting that *Acker v. Guinn* should not be so construed or extended see: Comment, *Lignite—Surface or Mineral? The Single Test Causes Double Trouble*, 28 Baylor L.Rev. 287, 300–312; *Is Coal Included in a Grant or Reservation of "Oil, Gas or Other Minerals"?*, 30 S.W.L.J. 481, 504–507. See also *Surface or Mineral: A Single Test?*, Baylor L.Rev. 407, 416–418.

law. This is for the reasons stated in my former dissenting opinion [1] and for the additional reasons stated herein with respect to the opinion of the Court this day substituted for its opinion of May 25, 1977. This separate and additional dissent is directed solely against the following sentences on page six of the new majority opinion:

".   .   . Furthermore, the rule of construction does not favor the surface owner simply because it is shown that the substance 'may' be produced by strip or pit mining. *Instead, the surface estate owner must prove that, as of the date of the instrument being construed, if the substance near the surface had been extracted, that extraction would necessarily have consumed or depleted the land surface.*" (Emphasis supplied.)

My objections to this burden of proof being placed upon the surface owner are much the same as those stated in the concurring opinion of the Chief Justice. I agree with him that conditioning the surface owner's title on proof that surface destructing processes were the only means of extracting the near-surface mineral substances at the time of the deed is a departure from the "general intent" reasoning of *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971).

In the absence of ambiguity, I construe the "general intent rule" of *Acker* as one which calls for construction of the mineral grant or reservation as a matter of law from the terms of the written instrument without the aid of extrinsic evidence and fact findings. It was in such manner that in *Acker*, after considering the ordinary and natural meaning of the terms, the location of the iron ore with respect to the surface, and methods of production and their effect on the surface, we decided that the substance was "quite similar to gravel and limestone"; that it, like gravel and limestone "should be considered as belonging to the surface estate and not as a part of the minerals." Thereupon, we held in *Acker* that "as a matter of law no interest in the ore passed by the [mineral] deed."

In *Acker* there was no dispute about the nearness of the substance to the surface or its being subject to a method of extraction which would consume or deplete the surface. Neither do I find any dispute between the parties on these physical characteristics of lignite in the present case. It is shown by this record and is commonly known that lignite is a low-grade coal with near-surface deposits occurring from surface outcroppings to 200 feet below the surface in much of the eastern portion of Texas, including Freestone County, and that it is extracted by modern surface-mining methods.[2] Wylie admitted in his post-submission brief that "these substances occur in Texas from points near surface to depths of five thousand feet   .   .   ." and that "it is feasible to remove lignite by strip mining methods down to a maximum depth of two hundred feet from the surface." (Post-Submission Brief of W. C. Wylie, et ux., p. 3.) Furthermore, Mrs. Reed only asked in this suit for a determination of title to "all of the coal and lignite that may be removed   .   .   . by open pit or strip mining methods." Wylie joined issue and tried the case on pleadings, affidavits and briefs which seem to agree that there is near-surface as well as deeper lignite and coal on the land in question.

Under these circumstances I see no need for a remand for the purpose of taking evidence of the location and depth of the near-surface (above the depth of 200 feet) lignite. However, if I am mistaken and there does exist a disputed fact issue between the parties as to such location and depth, the Court has properly remanded for

1. See dissenting opinion of May 25, 1977, reported in Tex.Sup.Ct. Journal, Vol. 20, May 28, 1977, pages 330–334. In order to avoid repetition and rewriting, the former dissent is attached hereto with the only changes being those necessary to conform to the substantial and helpful changes made by the Court in its substituted opinion.

2. Kaiser, *Texas Lignite: Near-Surface and Deep Basin Resources*, p. 3 et seq., Bureau of Economic Geology, Report of Investigations— No. 79 (1974). See also exhibit attached to the post-submission brief of W. C. Wylie showing cross section of Texas Lignite Prospect with a seam of lignite running from surface outcroppings to a depth of 200 feet.

proof thereon. If upon rehearing it is agreed or shown that lignite exists at or near the surface, then the trial court should decide ownership to be in the surface owner as a matter of law, it having been conceded that lignite located above 200 feet is subject to extraction by strip mining methods.

The majority opinion agrees that if lignite "lies at the surface of the land, no further proof would be required to establish the title of Reed," the surface owner. This holding for the surface owner as a matter of law as against Wylie's mineral reservation in the 1950 deed, does not require the surface owner to prove that if the substance had been extracted at the time of the deed that such extraction would necessarily have consumed or depleted the land surface. I would extend the same holding as a matter of law to lignite shown to exist at or near the surface, because that is the only holding which is in accord with *Acker v. Guinn.*

Method of production was only one of the three tests of *Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949), which led the Court in that case and in *Acker* to hold as a matter of law that near-surface mineral substances belong to the surface estate unless otherwise specifically provided by the parties. That the near-surface substance was subject to removal by methods which would destroy or impair the surface was an important consideration, but *Acker* made no requirement of proof that extraction of the substance on the date of the instrument (1941) "would necessarily have consumed or depleted the land surface." The ultimate and controlling factor was the close physical relationship of the substance to the surface itself. That was our interpretation of *Acker* when this Court said in *Robinson v. Robbins Petroleum Corporation, Inc.,* 501 S.W.2d 865, 866 (1973):

> ". . . When closely related to the surface itself, gravel and limestone and even iron ore have been held not to be embraced by mineral ownership. *Acker v. Guinn,* 464 S.W.2d 348 (Tex.1971); *Heinatz v. Allen,* 147 Tex. 512, 217 S.W.2d 994 (1949); *Psencik v. Wessels,*

205 S.W.2d 658 (Tex.Civ.App.1947, writ ref.)."

The objectionable sentences in the substitute opinion place undue emphasis on the expression "must be removed" in *Acker. Atwood v. Rodman,* 355 S.W.2d 206 (Tex. Civ.App.1962, writ ref'd n. r. e.), cited with approval in *Acker,* affirmed a judgment for the surface owner against the mineral owner for all sand, clay, gravel, caliche and limestone which *may* be removed by the open pit or quarry method.

The rationale of the *Acker* and *Heinatz* decisions that near-surface mineral substances belong to the surface estate is based upon the conclusion from the written instruments that the parties contemplated that the integrity and uses of the surface would be protected from destruction by any and all methods of extraction of near-surface minerals that would destroy or deplete the surface. There is no reason to inject a fact question as to the effect of extraction at the time of the deed or leases, because the "general intent" of the parties to a 1940 deed was not simply to avoid destruction of the surface by methods then available but also to avoid such destruction by any methods that may be devised in the future, because the same risk to the surface owner continues to exist. Why limit consideration of the result of near-surface mineral extraction to the time of the deed? Was the intent to protect the surface from destruction or impairment limited only to the date of the deed? Obviously not.

A great and unnecessary burden is placed upon the surface owner as to near-surface lignite by the requirement of extrinsic proof as to the possible means of extraction at the time of the instrument being construed. This could be difficult or impossible in instances of ancient leases and deeds.

There is a rule of law that proof of the present existence of an object, thing, condition, or method raises the presumption of its prior existence on a given date. *Ross v. Green,* 135 Tex. 103, 139 S.W.2d 565 (1940); *State v. Macken,* 162 S.W. 1160 (Tex.Civ. App.1913, writ ref'd); *Eubanks v. Winn,* 469 S.W.2d 292 (Tex.Civ.App.1971, writ

ref'd n. r. e.); *Brice v. Edwards*, 260 S.W.2d 132 (Tex.Civ.App.1953, writ ref'd n. r. e.); *Rumbo v. Nixon*, 241 S.W.2d 983, 985 (Tex. Civ.App.1951, no writ); *Johnson v. Charles William Palomba Co.*, 114 Conn. 108, 157 A. 902, 80 A.L.R. 441 (1932); II Wigmore on Evidence § 437, 413–414 (3rd Ed.); 31A. C.J.S. Evidence § 140, 305–307; 29 Am. Jur.2d 245, 292; 7 A.L.R.3d § 4, 1308.

Although intention of the parties when they executed the instrument is an important determination, our decisions in the past have not been concerned with their subjective intent, knowledge, or attending circumstances. Unless an ambiguity appears, which is not present here, the interpretation of mineral and surface estate conveyances, leases, devises, and reservations has been by consideration of commonly known factors, and ownership has been determined from the wording of the instruments as a matter of law. That is the only way to insure certainty and stability of land titles. When we condition title on what "must be proved" concerning the result of a method of extraction as of a given date in the past, we base the intention of the parties not upon the language of their document but on matters of fact and opinion evidence. We have been cited no cases by the parties, and the majority cites none, holding that determination of what constitutes a "mineral" within the meaning of an "other minerals" grant or reservation is a fact question, much less a question limited to production methods as of a past date.

By injecting questions of fact which existed at the time of the deed into the determination of the ownership of near-surface lignite, coal and similar substances, *Acker* is stripped of all of its precedential value as a matter of law; titles will now have to be determined by fact findings on a case by case basis. It is clear from this record that the status of near-surface lignite and the method by which it will be mined are not going to change from tract to tract or case to case. Yet if title thereto is tried on a case by case factual basis the result may vary according to the testimony of warring "expert" witnesses and the findings of various juries. This leaves the possibility that those who have dealt with surface rights during the past six years on the basis of the rule of law stated in *Acker* may or may not end up with title to near-surface mineral substances, depending upon expert testimony and what a jury or judge finds on this newly required ultimate issue.

For instance, if a jury finds that there was some other means of extracting the near-surface mineral without consuming or destroying the surface as of the date of the mineral reservation, lease, or deed, the surface owner loses even though the only reasonable method of such extraction today is by methods which will destroy the surface. This is a result which hardly could have been contemplated by the parties to the Wylie deed. The possibility of such result should be foreclosed as a matter of law, because there is nothing in the Wylie deed and mineral reservation to indicate that such was contemplated by him or his surface grantee. Under such circumstances, it is unreasonable as a matter of law to permit any construction of the deed which would attribute to either party an intent to reserve from the surface grant any mineral substance which then or at any time in the future might result in the consumption, destruction or substantial impairment of the surface.

As indicated, I would hold as in *Acker* and *Heinatz*, as a matter of law, that the ordinary and natural meaning of the term "mineral" does not contemplate that the utility of the surface will be destroyed, consumed or substantially impaired, and that substances such as sand, gravel, limestone, iron ore and near-surface lignite are not within the ordinary and natural meaning of the term "minerals" because they form so much a part of the soil that they are within the ordinary and natural meaning of the term "surface estate." Paraphrasing *Acker*, I would hold that in terms of location with respect to the surface, methods by which lignite is mined, and the effect of production upon the surface, the substance is quite similar to gravel, limestone and iron ore. Aside from the general reference to "other minerals," there is nothing in the

Wylie deed suggesting an intention to retain in the grantor the right to consume or destroy the surface. It is my opinion that under these circumstances, lignite, like gravel, limestone and iron ore, should be considered as belonging to the surface estate and not as part of the minerals. I would hold that as a matter of law no interest in the lignite coal was retained by the reservation in the Wylie deed.

Accordingly, I would reverse the judgment of the Court of Civil Appeals and remand the case to the trial court with instructions to enter a judgment in favor of plaintiff, Bette Reed, Trustee, in accordance with this opinion.

STEAKLEY, J., joins in this dissent.