Weldon W. SHEFFIELD et al., Appellants,

v.

GIBBS BROTHERS AND COMPANY, a partnership, Appellees.

No. 17596.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 14, 1980.

Rehearing Denied March 13, 1980.

McGinnis, Lochridge & Kilgore, C. Morris Davis, Austin, Sewell & Riggs, Robert E. Meadows, Engel, Groom, Miglicco & Gibson, Rudy M. Groom, Houston, for appellants.

Austin & Arnett, Houston, Fitzhugh H. Pannill, Jr., Pannill & Morgan, Charles L. Morgan, Jr., Huntsville, for appellees.

Before COLEMAN, C. J., and WALLACE and DOYLE, JJ.

COLEMAN, Chief Justice.

This is an appeal from a summary judgment rendered in a declaratory judgment action. The trial court construed a mineral reservation to include coal and lignite, and this appeal resulted.

On August 4, 1955, the appellee, Gibbs Brothers, conveyed by deed 1,127 acres of land located in Grimes County, Texas, to E.E. Townes. All of the defendants trace their title to this deed. Two tracts carved out of the conveyance to Townes, known as the Sheffield and Werneke tracts, were leased to HFC for coal mining purposes in 1974, and these leases were subsequently assigned to Northwestern with certain interests and overriding royalties retained.

The Gibbs-Townes deed contained the following mineral reservation:

"There is expressly reserved and excepted out of this conveyance in favor of the grantors herein, their heirs and assigns forever, and not made a part of this grant, all of the minerals and mineral rights, except sand, gravel and stone, in and under and that may be produced from the land hereinabove conveyed."

Gibbs Brothers assert that this wording clearly and as a matter of law excepts and reserves to it all of the coal and lignite in and under and that may be produced from the land in controversy including near surface coal and lignite which is to be mined by open pit or strip mining processes. In *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971), the Supreme Court approved a basic approach suggested in Kuntz, The Law Relating to Oil and Gas in Wyoming, 3 Wyo.L.J. 107, 112. Kuntz indicates that the courts have mistakenly attempted to discover and give effect to an intention to include or exclude a specific substance from the grant or reservation. He suggests that the intention sought should be the general intent rather than any supposed or unexpressed specific intent, and that the general intent should be arrived at by considering the purposes of the grant or reservation in terms of manner of enjoyment intended in the ensuing interest. He asserts that the parties intend to sever the mineral estate from the surface estate, leaving the owner of each with definite incidents of ownership enjoyable in distinctly different manners. The manner of enjoyment of the mineral estate is through extraction of valuable substances, and the enjoyment of the surface is through retention of such substances as are necessary for the use of the surface.

The Supreme Court in *Acker v. Guinn* stated that it is not ordinarily contemplated that the utility of the surface for agricul-

tural or grazing purposes will be destroyed or substantially impaired. "Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of 'minerals' or 'mineral rights' should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate."

The Supreme Court reaffirmed and explained the rule of *Acker v. Guinn* in the case of *Reed v. Wylie,* 554 S.W.2d 169 (Tex. 1977), where it said (speaking of *Acker v. Guinn* ):

"The Court wrote that a general intent rather than the specific thinking or intent of the parties should be the inquiry where the instrument itself expresses no specific intent and it can only be supposed. The general intent of a grant or reservation of minerals by a fee owner was taken to be to create an estate in the mineral owner in the valuable substances usually removed from the ground by means of wells or mineshafts but not by a method which would destroy or deplete the surface."

In *Reed v. Wylie* the court gave some examples which would affirmatively and fairly express an intention to include a substance that must be removed by methods that will consume or deplete the surface estate in this language:

" . . . If the instrument had specifically reserved coal and lignite, or if the conveyance had expressly reserved all minerals lying upon the surface or at any depth and including those minerals which may be produced by open pit or strip mining, the intention and effect of the instrument would have been clearly expressed. . . ."

Gibbs Brothers contends that the reference to "sand, gravel and stone" shows a clear intention that these substances are included in the term "minerals." It is argued that when the parties to the Gibbs-Townes deed inserted the words "except sand, gravel and stone", they must necessarily have done so for the purpose of evidencing their intention that the term "min-

erals" would include substances which may be produced by open pit or strip mining, such as sand, gravel and stone, unless those substances were specifically granted. If they were excluded as a matter of law anyway, it would be pointless for the parties to exclude them specifically.

■ The intention to include coal and lignite within the meaning of the words minerals and mineral rights must be affirmatively and fairly expressed. Where an instrument reserves all of the minerals and mineral rights in and under and that may be produced from the land granted it will be conclusively presumed that there was no intention to grant surface coal and lignite unless there is an affirmative statement included in the grant or reservation which fairly expresses the intention of the parties that those substances be included in the grant or the reservation.

■ Here the grantor specifically excepted from the reservation sand, gravel and stone, substances usually removed from the ground by methods which would destroy or deplete the surface. This language does not affirmatively express the intention to reserve coal and lignite. It is at most a negative expression. From the fact that substances which are not usually considered minerals were specifically excepted from the reservation, an inference must be drawn that all other substances which would destroy or deplete the surface on removal have been included in the terms "minerals and mineral rights." Evidence that one or both of the parties might have intended by the use of that language to reserve to the grantor the coal and lignite is immaterial. *Reed v. Wylie,* supra.

The meaning of the words "affirmatively authorized" as used in an act of Congress was considered in the case of *Hubbard v. Fort,* 188 F. 987 (Circuit Court, D. New Jersey. 1911). There the court said:

" . . . The use of the word 'affirmatively' with 'authorized' would be difficult to understand except for the use of the word 'authorize' in the latter part of this section where the building of certain

structures . . . are forbidden without the authority of the Secretary of War. . . . In view of the context, the word 'affirmatively' was legislatively used to distinguish the two kinds of authority referred to, and to make it plain that the initial authorization to create an obstruction was not to rest on implied, but express . . . affirmative . . congressional authority."

*Hubbard v. Fort,* supra, was cited and followed in *White, Gratwick & Mitchell, Inc. v. Empire Engineering Co., Inc.,* 210 N.Y.S. 563, 125 Misc.Rep. 47 (Supreme Court, Erie County, October 1, 1923.).

■ By the use of the words "affirmatively expressed", we conclude that the Supreme Court of Texas has determined that when construing instruments granting or reserving "minerals" or "mineral rights" the general intent of the parties to the instrument is to exclude substances that must be removed by methods that will consume or deplete the surface estate unless a contrary intention is expressly or clearly stated.

■ When construed under the rules laid out in *Acker v. Guinn,* supra, as explained in *Reed v. Wylie,* supra, the scope of the mineral reservation in question is established as a matter of law and does not include coal and lignite if at the time of the conveyance these substances could have been extracted only by a method that would have destroyed a substantial portion of the surface of the land. A fact issue was raised in the response to the motion for a summary judgment as to whether or not substantial quantities of lignite lie so near the surface that the production would necessarily entail the stripping away and substantial destruction of the surface. The trial court erred in granting the summary judgment.

The judgment is reversed and the cause is remanded.