**Margaret Lyne MOSER et al.,**
**Appellants,**

**v.**

**UNITED STATES STEEL CORPORA-TION et al., Appellees.**

**No. 5427.**

Court of Civil Appeals of Texas, Eastland.

June 18, 1980.

Rehearing Denied July 17, 1980.

John H. Miller, Jr., Sinton, Luther E. Jones, Jr., Corpus Christi, William G. Burnett, Sinton, for appellants.

Charles G. King and Jack L. Harvey, Bracewell & Patterson, Houston, Robert D. Nogueira, Beeville, for appellees.

McCLOUD, Chief Justice.

The question is whether the surface owners or the mineral owners own the uranium found "near the surface" of a 6.77 acre tract of land located in Live Oak County.

Plaintiffs [1], the surface owners, sued defendants [2], the mineral owners, seeking to

---

1. Plaintiffs are Margaret Lyne Moser, Individually and as Independent Executrix and Testamentary Trustee of the Estate of Catherine Carol Lyne, and her husband, William Barnett Moser, Jr., as Independent Executor and Testa-

mentary Trustee of the Estate of Catherine Carol Lyne. Plaintiffs will be referred to as the Mosers and as the surface owners.

2. See note 2 on page 732.

quiet their title to the uranium. The mineral owners filed a counterclaim alleging that all parties agree that the uranium will be produced by the process known as solution mining which does not consume or deplete the surface estate. The surface owners excepted to the Gefferts' allegations regarding "solution mining" and urged that the allegations were immaterial because that process did not exist in 1949 when the "other minerals" were reserved. The Mosers' special exceptions were overruled. Following a jury trial, judgment was rendered for the mineral owners. The surface owners appeal. We affirm.

Prior to February 24, 1949, the Mosers' predecessors in title owned a tract of land separated from land owned by the Gefferts' predecessors in title by a winding road known as the Picture Show Road. The owners learned that a new road was to be built which would not follow the existing road. The new road left a 6.77 acre tract of one owner separated from the remainder of his land, and a 6.42 acre tract separated from the other owner's land. On February 24, 1949, the owners executed similar deeds conveying the surface estates so that the owners would have contiguous tracts. Each deed excepted, "all of the oil, gas and other minerals of every kind and character, in, on, under and that may be produced from said tract." In 1969, the Mosers entered into a mining lease granting to their lessee the right to mine uranium under the 6.42 acre tract where they own only the minerals. There is evidence that they have accepted advance minimum royalty payments attributable to that tract.

The instant case was tried in 1979, and in the Gefferts' brief they rely not only on the rule announced in *Reed v. Wylie*, 554 S.W.2d 169 (Tex.1977), but also assert a quasi-estoppel theory. They argue that the two deeds executed in 1949 were part of a single transaction and the Mosers cannot claim the uranium under the 6.77 acre tract as surface owners, and also claim the uranium under the 6.42 acre tract as mineral owners.

The jury answered "No" to Special Issue No. 1 which asked if extraction of the uranium by the use of reasonable mining methods available on February 24, 1949, would "necessarily have been accomplished only by a substantial destruction of the surface" of the 6.77 acre tract. The jury found in Special Issue No. 3 that the production of uranium by the process of "solution mining" does not result in the substantial destruction of the surface from which uranium is produced.

Our Supreme Court in *Reed v. Wylie*, supra, held in 1977:

> Furthermore, the rule of construction does not favor the surface owner simply because it is shown that the substance "may" be produced by strip or pit mining. Instead, the surface estate owner must prove that, as of the date of the instrument being construed, if the substance near the surface had been extracted, that extraction would necessarily have consumed or depleted the land surface.

The Mosers argue the evidence conclusively established an affirmative answer to Special Issue No. 1. They assert alternatively, that the negative finding to Special Issue No. 1 is contrary to the great weight and preponderance of the evidence.

■ In an effort to meet the test announced in the 1977 Reed opinion, the Mosers attempted to show that as of February

---

**2.** Defendants consist of two groups. The first is all persons who own the mineral estate in the 6.77 acre tract: Janie Geffert, Rufus A. Geffert, Raymond O. Geffert, Viola L. Clifton, August Geffert, Jr., Janie Bel Buxkamper, Marvin L. Geffert, Leroy E. Geffert, Mary Ellen Cole, Wilbert G. Geffert, Robert L. Geffert and Harry O. Geffert, Jr. The second group is United States Steel Corporation, N. M. Uranium, Inc., and Atlantic Richfield Company. U. S. Steel and N. M. Uranium have a mining lease from the Gefferts covering the 6.77 acre tract. Atlantic Richfield has an overriding royalty. The defendants will be referred to as the Gefferts and as the mineral owners.

24, 1949, the uranium under the 6.77 acre tract would have been "strip" mined and this would have depleted and destroyed the surface. The surface owners' witnesses agreed that it would be unreasonable to confine the strip mine to the 6.77 acre tract. They testified, however, that in reasonable probability the 6.77 acre tract would have been included with adjacent land and the entire ore body would have been mined in 1949 by surface mining methods. The Gefferts presented testimony that the uranium would have in reasonable probability been extracted by "underground" mining and the surface not destroyed. There is expert testimony supporting each position. We hold that the Mosers have failed to conclusively establish that as of February 24, 1949, the extraction of the uranium by the use of reasonable mining methods then available would necessarily have been accomplished only by a substantial destruction of the surface of the tract. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974). After reviewing all the evidence, we hold that the jury's answer to Special Issue No. 1 is not contrary to the great weight and preponderance of the evidence. *In re King's Estate*, 244 S.W.2d 660 (Tex.1951).

We think, however, this appeal should be governed by the rule announced by our Supreme Court, after oral submission of the instant appeal, in the second *Reed v. Wylie* case, 597 S.W.2d 743, 747 (Tex.1980) which reexamined its first *Reed* opinion and returned to its former opinion in *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971). The court stated:

The first opinion in *Reed* holds that since the general intent of the parties is to be determined by the instrument executed, the lignite must have been strip mined as of the date of the instrument. That created a fact question as to the state of the art of removal of the substance upon some particular date in the past. The older the instrument the more ·difficult the proof would be. The parties would have to employ an expert, or experts,

who could testify as to the state of the art as of the date of the execution of the instrument. It might result in the ownership of the substance on adjacent tracts being different depending upon the testimony of experts as to the state of the art at the date of the instrument. This rule had, and would have, a very unstabilizing effect upon land titles.

Acker made no such requirement. After an introductory paragraph setting out the instrument and the date of its execution in 1941, the opinion nowhere says that there must have been proof of surface destructive methods of removal in 1941. Instead, the opinion repeatedly used the present tense. The agreed fact was that the substance must be strip mined, and "are recoverable . . .".

As pointed out in the dissent in *Reed*, the general intent of the parties was not that the surface not be destroyed only in 1941, but thereafter as well. 554 S.W.2d at 181–182.

So, as above, we return to Acker. That part of the Reed opinion which required a fact finding that the surface must have been destroyed as of the date of the instrument is overruled. The test now is whether any reasonable method, including such a method as of the date of this opinion, of removal of the lignite, coal or iron will consume, deplete or destroy the surface.

The uranium under the 6.77 acre tract is not found "at the surface of the land." The nearest ore horizon to the surface is approximately 193 feet below the surface [3], with another more substantial concentration of uranium occurring at approximately 325 feet below the surface. The 6.77 acre tract is a part of the "Boots" ore body which is a major uranium deposit holding several million pounds of uranium.

It is undisputed that at the present time, as contrasted to February 24, 1949, the uranium under the 6.77 acre tract will be mined, and is being mined in the immediate vicinity, by a solution mining method. This

3. We note that the court in the second *Reed* opinion holds that a deposit of lignite, iron, or coal which is within 200 feet of the surface is "near surface" as a matter of law.

process was not in existence in 1949. The uranium from the Boots ore deposit has always been extracted by solution mining. There has never been any strip mining or underground mining "on the Boots" ore body. Solution mining is a process by which wells are drilled into ore horizons containing uranium and solvents are injected through these wells to capture the uranium from the land in solution form. The solution is then piped to a processing plant and processed into uranium oxide, which is the product sold in the marketplace. The evidence conclusively establishes that the surface is not depleted or destroyed by the solution mining process. Also, we point out that the jury found in Special Issue No. 3 that the solution mining process does not result in substantial destruction of the surface. We hold, as a matter of law, that the only reasonable method of extracting the uranium from the 6.77 acre tract, at the time of trial, as shown by the record, is by solution mining.

We apply the rule announced in the second *Reed* case retroactively. *Storrie v. Cortes,* 38 S.W. 154 (Tex.1896). There is nothing in the opinion to indicate that the reexamined and reannounced rule from *Acker* is to operate only prospectively.[4]

We note that the court in *Cain v. Neumann,* 316 S.W.2d 915 (Tex.Civ.App.—San Antonio 1958, no writ) said:

> The broad language of the 1918 lease which granted "all of the oil, gas, coal and other minerals," . . . reveals an unrestricted grant of minerals, including uranium.

*Cain* was decided long before *Acker v. Guinn,* supra, and the destruction or depletion of the surface was not in issue. We do not consider *Cain* to be in point.

We hold, as a matter of law, that the mineral owners own the uranium underlying the 6.77 acre tract under the rule announced in the second *Reed* case. Moreover, we hold that the mineral owners are entitled to judgment on the verdict under

the test stated in the first *Reed* opinion. It is not necessary to discuss the Gefferts' quasi-estoppel theory.

We have examined all points of error. The surface owners have failed to show reversible error. The judgment of the trial court is affirmed.

---

4. See Justice Keith's dissenting opinion in *Thornal v. Cargill, Inc.,* 573 S.W.2d 845, at 847 (Tex.Civ.App.—Beaumont 1978), *aff'd in part* and *rev'd in part per curiam,* 587 S.W.2d 384 (Tex.1979).