No. 46,642

ROBERT O. WULF and HAZEL WULF, *Appellees,* v. M. W. SHULTZ, *Appellant.*

(508 P. 2d 896)

Opinion filed April 7, 1973.

*C. Bruce Works,* of Topeka, argued the cause, and was on the brief for the appellant.

*Michael L. Jones,* of Wichita, argued the cause, and *Richard Jones,* of Wichita, and *Howard M. Immel,* of Iola, were with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal in a declaratory judgment action instituted pursuant to the provisions of K. S. A. 60-1701 *et seq.*

Robert O. Wulf and Hazel Wulf (plaintiffs-appellees) filed suit alleging they were the owners of the entire fee simple title to a certain tract of land in Allen County, Kansas; that the tract of land was subject to an oil and gas lease and that the record owner of the lease was M. W. Shultz (defendant-appellant). The petition requested the court to consider and interpret the lease to limit the defendant's rights thereunder to the exploration for and production of oil, gas and related minerals only.

The defendant answered claiming the lease covered not only oil, gas and related minerals, but also all other mineral substances.

With the issue so framed the plaintiffs filed a motion for summary judgment on June 17, 1971.

On September 2, 1971, the defendant filed a motion requesting summary judgment be granted to him. On the same date the defendant filed an affidavit stating in part that:

". . . Monarch Cement Plant has purchased the land which belongs to plaintiff, Robert Wulf, herein and that said plaintiff is not a real party in interest."

On September 7, 1971, the plaintiffs filed an affidavit stating in essence that the Monarch Cement Company had not purchased the land involved in the action and had no obligation to do so.

On October 14, 1971, the trial court filed its memorandum decision sustaining the plaintiffs' motion for summary judgment, following which the defendant duly perfected an appeal.

The appellant first contends the trial court erred in granting summary judgment when there were two conflicting affidavits as to the real party in interest. The appellant argues where affidavits affirmatively show there is a dispute as to a material fact, summary judgment should not be granted.

It is to be noted the appellant's motion for summary judgment recited in part, ". . . [T]here is no genuine issue as to any material fact. . . ." Counsel for the appellant argued his motion

to the trial court, but now seeks to rely on his affidavit which alleged the appellees were not the real parties in interest.

K. S. A. 60-209 states in pertinent part:

". . . When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of any party to sue or be sued in a representative capacity *he shall do so by specific negative averment,* which shall include such supporting particulars as are peculiarly within the pleader's knowledge." (Emphasis added.)

This court recently held in *Marr v. Geiger Ready-Mix Co.,* 209 Kan. 40, Syl. ¶ 6, 495 P. 2d 1399, that the failure of a party to comply with the above quoted provisions of K. S. A. 60-209 must be regarded as a waiver by the party of such defense. Accordingly, the appellant must be regarded as having waived the defense which he attempts to assert by affidavit.

The appellant next contends the trial court erred in granting summary judgment in favor of the appellees because the lease gives the appellant the right to extract minerals, as well as oil and gas.

The issue presented is whether the lease in question grants to the lessee the right to extract coal, clay, gypsum, limestone, gravel, rock, dirt and argillaceous materials from the leasehold as well as oil and gas and their derivatives. The trial court held that it does not.

The lease was prepared in the form of most oil and gas leases with two minor exceptions. The lease, dated June 25, 1929, is entitled "OIL AND GAS LEASE" and reads in part as follows:

". . . [H]ereby granting to Second Parties full and exclusive authority to enter upon said premises and to dig, drill, operate for and procure natural gas, petroleum and *other mineral substances,* together with the right of taking upon said premises and removing therefrom at pleasure, any machinery, tools, lumber, pipe, casing, and other things necessary in said work; and to construct on said premises and remove therefrom at pleasure *pumping plants, tanks, pipe lines,* and other things necessary in the operation of this lease, *avoiding,* as far as practicable, *damage to fences and growing crops;* but in case damage to these, Second Parties agree to pay such damage, the same to be fixed by appraisers, should the parties hereto fail to agree as to the amount of the same.

"*There is already on said premises two producing oil wells and one gas well and also engine and power, pipelines, two tanks and other oil well supplies* which is the property of the second parties and it is agreed that second parties are to pay to said first parties *as royalty, one-eighth of the gas sold or marketed from said premises.* Said second parties to furnish the meter or meters for measuring said gas and shall maintain same at their own expense. Gas to be paid for as sold and marketed.

"In the event of the discovery of *petroleum or other mineral substances* second parties shall deliver *as royalty* to first parties *in tanks near the mouth of the well or wells or at the mouth of pit or shaft or into pipeline without cost*

*to first parties ⅛ of such product* or pay the market price in cash therefor at the option of first parties and the remainder of such production shall belong to said second parties.

"If gas is discovered in paying quantities on said premises said first parties shall have gas free at well for domestic purposes for the house now on said premises.

"If gas or petroleum is discovered on said premises, second parties shall have and use, free of royalty, all the gas or petroleum desired for drilling or operating purposes.

"The second parties shall have the free use of any water on said premises, for drilling and operating the lease. . . .

"*The second parties agree to drill no well,* except by consent of First Parties, *within two hundred feet of any building now on said premises all pipelines crossing cultivated land or meadows shall be buried beyond plow depth.*" (Emphasis added.)

The lease was to run for a period of 99 years.

The appellant argues the words "other mineral substances" and the words "pit or shaft" demonstrate the intent of the parties was to grant to the lessees the right to extract any mineral found. This point is not well taken.

The record reveals the existence of a strata of limestone 30-35 feet thick located approximately three feet below the surface of much of the tract. There are limestone outcroppings on the tract also. This limestone would be relatively easy to quarry and is of considerable value in the manufacture of cement. At the time the lease was executed, limestone was being quarried a short distance away.

An examination of the lease leads us to but one conclusion: That the intention of the original parties to the lease was to restrict the scope of the lease to the exploration and production of oil, gas and related minerals.

Of importance is the fact that the original parties to the lease designated it an "OIL AND GAS LEASE". These words in themselves are limiting. If the parties, at the time the lease was executed, desired the lessees to have more than a simple lease for oil and gas, they would have broadened the title of the leasing instrument. In construing a lease such as this it is proper to consider the form of the instrument in its entirety, including the title assigned to it by the parties, to resolve the issue.

Here the entire lease is couched in terms of oil and gas, those substances dominating the attention of the parties when the lease was executed. As a matter of fact, on the date of the lease, two producing oil wells and one gas well in addition to the necessary

engines and power, pipelines, tanks and other oil well supplies were already on the premises. Moreover, the parties made provision for royalty payments on the gas and petroleum sold and marketed, the royalty being set at one-eighth of the product produced, the standard oil and gas royalty fraction.

After making provision for the payment of royalty, the succeeding paragraph in the lease provides for the free use of gas by the lessors, and in the next paragraph the lease provides the free use of gas or petroleum by the lessees for drilling or operating purposes. Both provisions are contingent upon discovery of gas or petroleum. No provision is made in the event any other mineral substances are discovered.

The intention of the parties is further indicated as limiting the lease to oil and gas where the lessor permitted the free use of any water on the premises only "for drilling and operating the lease." The lessee agreed to drill no wells within two hundred feet of any building on the premises. Provision was made that all pipelines should be buried below plow depth, pipelines being the most common means for transporting oil and gas. From these provisions it is apparent the parties were focusing their attention on matters relating to oil and gas, not matters relating to any other mineral substance.

The quarrying of limestone, for which the appellant seeks the right under the terms of this lease, was not within the contemplation of the original parties to this lease. The presence of limestone near the surface was known to the parties, and would have to be mined by the open pit or strip-mining method, such operations necessarily destroying the surface for agricultural or grazing purposes. It is apparent from the whole lease the parties, in using the words, "natural gas, petroleum and other mineral substances" did not intend that the mineral estate should be allowed to destroy the surface estate. Had they so intended provision would have been made in the lease. (See, *Guinn v. Acker,* 451 S. W. 2d 549 [Texas, 1970].)

It is not usually contemplated by the parties to a lease such as this that the utilization of the surface for agricultural purposes would be impaired by the rights granted, unless a contrary intention *is* clearly expressed. A grant, as here, including "other mineral substances" should not be construed to include a substance which requires destruction of the surface estate for its removal.

Further evidencing the intent of the parties to limit the lease to

oil and gas operations is the paragraph which provides that upon surrender of the lease, the lessees should be permitted to remove "all buildings, machinery, pipelines, casing and tubing and all other things of value. . . ." These items are all commonly found upon oil and gas leasehold operations, but not upon a lease used for removal of mineral substances other than oil and gas. The foregoing items are similar to those listed in the granting clause, whereby the lessee was given the right to take upon the premises and remove therefrom such specified items. The granting clause specifies items commonly found upon operating oil and gas leases. Undoubtedly, all of these items were already upon the leased premises which had two producing oil wells and a gas well located thereon as of the date the lease was executed.

The appellant's position that the lease in question covers mineral substances other than oil and gas is based upon isolated words found in the granting clause of the lease. The lease authorized the lessee "to dig, drill, operate for and procure natural gas, petroleum and other mineral substances. . . ." This is standard terminology used in oil and gas leases. The appellant further relies upon the paragraph concerning the royalties to be paid the landowners. It provides that,

"In the event of the discovery of petroleum or other mineral substances second parties shall deliver as royalty to first parties in tanks near the mouth of the well or wells or at the mouth of pit or shaft or into pipeline without cost to first parties ⅛ of such product. . . ."

Here the words "at the mouth of pit or shaft" cannot be isolated from the remainder of the quoted clause as the appellant attempts to do. Appearing directly before the words "at the mouth of pit or shaft" are the words requiring delivery "in tanks near the mouth of the well or wells or" and directly following the expression isolated by the appellant are the words "or into pipeline". Obviously, limestone cannot be delivered "in tanks" or "into a pipeline". The words "at the mouth of pit or shaft" would have to be taken out of context if they related to substances other than oil and gas. These words cannot be isolated, as the appellant attempts to do, to change the nature of the entire lease.

Although limestone was being quarried a short distance from the leasehold in question at the time of the execution of the lease, the original parties thereto made no references whatever to limestone or to any other mineral substance which required quarrying operations. Surely, if the parties had contemplated that the lease

was to cover minerals other than oil and gas, or related substances, they would have mentioned them specifically in the lease.

The rule of *ejusdem generis* has been applied in cases similar to this both in Kansas and other jurisdictions.

In *Keller v. Ely*, 192 Kan. 698, 391 P. 2d 132, *ejusdem generis* was defined. The court said:

". . . Briefly stated, that rule is a well-known maxim of construction to aid in ascertaining the meaning of a statute or other instrument, the doctrine being that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase is to be held to refer to things of the same kind with respect to a classification which immediately precedes it—that is to say, where general words follow particular words in an enumeration describing the subject matter, general words are construed to embrace only objects similar in nature to those enumerated by antecedent specific words." (p. 701.)

In *Keller* this court applied the rule of *ejusdem generis* in determining that the words, ". . . all of the oil, gas, casing-head gas and other liquid semi-solid and solid materials in and under and that may be produced from the above described lands, . . ." in a reservation clause of a deed included oil, gas and kindred minerals but *not* a deposit of gypsum. In reaching its decision the court considered the facts that, at the time the reservation was made gypsum was being produced in the county where the gypsum in question was located, and also that oil and gas were in production about six miles from the tract involved. The court concluded:

". . . [T]he general terms contained in the reservation must be deemed to embrace and include only those things similar in nature to those previously specifically enumerated—that is, oil, gas and kindred minerals. . . ." (p. 703.)

The courts generally have not limited their construction of leases and deeds containing the language "oil, gas and other minerals" to an application of the rule of *ejusdem generis*. (See, *Northern Natural Gas Company v. Grounds*, 292 F. Supp. 619 [1968] [10th C. C. A.].)

In the case at bar the original lessees were granted authority to enter upon the leased premises and "to dig, drill, operate for and procure natural gas, petroleum and other mineral substances. . . ." The words "natural gas" and "petroleum" limit the application of the following words, "other mineral substances", to oil, gas and related minerals. Minerals dissimilar in nature to oil and gas, such as limestone, are not included. The foregoing construction of the lease here in question is consistent with *In re Estate of Trester*, 172

Kan. 478, 241 P. 2d 475; and *Davis v. Plunkett,* 187 Kan. 121, 353 P. 2d 514.

In *Davis v. Plunkett,* supra, the court held:

"Notwithstanding that in classifying things as animal, vegetable and mineral everything that goes to make up the earth may be said to come within the general classification of minerals, such general classification cannot be used for the interpretation of instruments granting specific rights, for the term 'mineral' is not a definite one capable of universal application. In determining its meaning in a specific instrument it is subject to limitations according to the intention of the parties using it, and account must be taken not only of the language of the instrument in which it appears but also of the relative positions of the parties and the substance of the transaction embodied by the instrument." (Syl. ¶ 1.)

By their pleadings in this declaratory judgment action the parties do not contend the lease in question is ambiguous, but that it does require construction based upon the admitted facts alleged. The rules for the interpretation of a written contract under these circumstances are stated in *Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 389 P. 2d 803.

Where there is no genuine issue of fact and no ambiguity in a lease, the lease can be construed properly upon a motion for summary judgment in a declaratory judgment action. (*Mays v. Middle Iowa Realty Corp.,* 202 Kan. 712, 452 P. 2d 279.)

In the case at bar there was no genuine issue of fact before the trial court, the lease under consideration is not ambiguous, and application of the foregoing rules leads us to the conclusion that the rights of the appellant under the lease are limited to the exploration for and the production of oil, gas and related minerals only.

The judgment of the lower court is affirmed.