**AMOCO PRODUCTION COMPANY, a corporation; Champlin Petroleum Company, a corporation; Union Pacific Land Resources Corporation, a corporation, Plaintiffs–Appellees,**

v.

**GUILD TRUST; Melba L. Guild, Delmar D. Dean and Mary Melba Guild Dean, husband and wife; Earl Guild and Barbara Jo Guild, husband and wife; Ferd Christiansen and Eva Lois Christiansen, husband and wife, Defendants–Appellants.**

No. 79–1236.

United States Court of Appeals,
Tenth Circuit.

Argued Sept. 17, 1980.

Decided Oct. 27, 1980.

Rehearing Denied Jan. 14, 1980.

Charles D. Phillips, Evanston, Wyo., for defendants–appellants.

Daniel M. Gribbon, Washington, D. C. (Russell H. Carpenter, Jr., Washington, D. C., Houston G. Williams, Casper, Wyo., Harry O. Hickman and Frank H. Houck, Denver, Colo., D. Thomas Kidd, Casper, Wyo., Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., and Covington & Burling, Washington, D. C., with him on brief), for plaintiffs–appellees.

Before McWILLIAMS and BARRETT, Circuit Judges, and BOHANON, District Judge *.

BARRETT, Circuit Judge.

Guild Trust and others (hereinafter "Guild Trust") appeal from a District Court judgment which declared that appellees Amoco Production Company and others (hereinafter "Amoco") hold title to the entire mineral estate in certain lands in southwestern Wyoming, and which enjoined Guild Trust from interfering with Amoco's reasonable enjoyment of its rights in the mineral estate. *See Amoco Production Co. v. Guild Trust*, 461 F.Supp. 279 (D.Wyo. 1978).

The facts are thoroughly stated in the District Court opinion. Briefly, the Union Pacific Railroad Company in 1909 conveyed by deed the surface of some of its "checkerboard" lands received as grants from the United States Government to the Railroad in the mid–1800's. The Railroad reserved

* Of the United States District Courts for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

to itself "[a]ll coal and other minerals within or underlying said lands", and associated rights of entry and surface use.[1] Amoco is the successor in interest to the Railroad's reserved mineral estate, while Guild Trust is the owner of the surface estate. The principal issue in the case is whether the reservation of "coal and other minerals" includes the oil and gas.

Although the District Court allowed Guild Trust to present evidence at trial bearing on the actual intent behind the reservation language, the Court ultimately decided that the reservation must be interpreted without resort to extrinsic evidence. The Court noted that the Wyoming Supreme Court has not been called upon to rule whether a reservation such as that involved in this case is unambiguous and includes oil and gas. The Court thereupon examined state and federal case law, treatises, and other authorities. It concluded that the great weight of authority holds that a reservation of coal and other minerals includes oil and gas as a matter of law. The Court determined at least implicitly that the majority rule is also the controlling law in Wyoming. Applying the parol evidence rule, the Court held that the deed language reserving "coal and other miner-

als" to the Railroad is not ambiguous, and that the oil and gas was reserved to the Railroad and its successors, appellees herein, as "other minerals".

■ The District Court considered and rejected the minority Pennsylvania and Arkansas rules. The Pennsylvania rule is that the term "mineral" does not include oil and gas unless the language in the instrument indicates an intent to include those specific resources. The Arkansas rule requires extrinsic evidence of intent as to whether a reservation of "minerals" reserves the oil and gas. The Court concluded from the authorities that the Pennsylvania and Arkansas rules have not been followed in the West.[2] There is substantial support of the District Court's conclusion. "There is very limited authority for the proposition that the term 'minerals' is ambiguous as to whether or not oil and gas are included or excluded and hence extrinsic evidence may be admitted to resolve the ambiguity." Williams and Meyers, *Oil and Gas Law*, Vol. I, § 219.4 (1978). This turns upon the presence or absence of a presumption as to the meaning of the term "minerals". Thus, the presumption in Pennsylvania is that the term "minerals" does not include oil and gas, but such presumption may be rebutted.

---

1. The reservation in the deed reads:

   Excepting and reserving to said Pacific Railroad Company, its successors and assigns, First: A strip of land two (200) hundred feet wide on each side of the center line of the railroad of said Union Pacific Railroad Company *as said road is now constructed over and across said land.*
   Second: All coal and other minerals within or underlying said lands.
   Third: The exclusive right to prospect in and upon said land for coal and other minerals therein, and to mine for and remove, from said land, all coal and other minerals which may be found thereon by any one.
   Fourth: The right of ingress, egress, and regress upon said land to prospect for, mine and remove any *and all such coal or other* minerals, and the right to use so much of said land as may be convenient or necessary for the right of way to and from such prospect places or mines, and for the convenient and proper operation of such prospect places, mines and for roads and approaches thereto or for removal therefrom of coal, mineral, machinery or other material.

2. Apparently Oklahoma follows the Pennsylvania rule. *See Sloan v. Peabody Coal Co.*, 547 F.2d 115 (10th Cir. 1977), upholding the district court's determination that under Oklahoma law a reservation of "oil, gas and minerals" is unambiguous and *excludes* coal on the principle of *ejusdem generis.*

   Kansas seems to follow the Arkansas rule, in that importance is attached to the substance of the transaction and the relative positions of the parties thereto. *See Wulf v. Shultz*, 211 Kan. 724, 508 P.2d 896 (1973); *Davis v. Plunkett*, 187 Kan. 121, 353 P.2d 514 (1960); and *Hans v. Great Bend Brick & Tile Co.*, 172 Kan. 478, 241 P.2d 475 (1952). Kansas decisions also have applied the rule of *ejusdem generis. See Wulf v. Shultz, supra* ("natural gas, petroleum, and other mineral *substances" does not include* limestone, the removal of which would destroy the surface estate); and *Keller v. Ely*, 192 Kan. 698, 391 P.2d 132 (1964) ("gas, oil and mineral rights" does not include rights to gypsum). It is uncertain whether the Kansas courts would find that oil and gas are akin to coal under the rule of *ejusdem generis.*

*Bundy v. Myers,* 372 Pa. 583, 94 A.2d 724 (1953). "Although there is some limited authority in a few states that the term 'minerals' does not include oil and gas by the clear weight of authority, a grant or reservation, or lease of 'minerals' includes oil and gas unless other language in the instrument so restricts the definition of the term as used by the parties as to exclude these natural resources." Williams and Myers, *Oil and Gas Law,* Vol. I, § 219.1 (1978). *See also: Burke v. Southern Pacific R. R. Co.,* 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527 (1914) and *Skeen v. Lynch,* 48 F.2d 1044 (10th Cir. 1931) for the proposition that oil and gas (petroleum) has long been popularly regarded as a mineral oil and treated as a mineral.

When there are no controlling state decisions providing clear precedent, the views of the resident district judge on matters of state law carry extraordinary force on appeal. *Obieli v. Campbell Soup Co.,* 623 F.2d 668, 670 (10th Cir. 1980); *Farmers Alliance Mut. Ins. Co. v. Bakke,* 619 F.2d 885, 888 (10th Cir. 1980); *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1148 (10th Cir. 1978), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). We agree with the District Court's conclusion that, in Wyoming, the reservation of "coal and other minerals" is unambiguous and includes oil and gas. The District Court's analysis of the issue is adopted by this Court:

> Professor Hemingway in "The Law of Oil and Gas" § 1.1 (1971) states the proposition:

> "In perhaps a majority of states, a conveyance or reservation of the 'minerals' will include oil, gas and petroleum products, unless a contrary intent is manifested on the face of the instrument." See also, 1A Summers, The Law of Oil and Gas § 135 (1954):

> "It is a general rule adhered to by a majority of the courts, that a conveyance or exception of minerals includes oil and gas, unless from the language of the instrument, or from the facts and circumstances surrounding the parties at the time of the execution, it is found that the term was used in a more restricted sense."

> \*    \*    \*    \*    \*    \*

... Pruitt makes clear in his article, "Minerals Terms–Some Problems In Their Use and Definition", Eleventh Annual Rocky Mountain Mineral Law Institute 1, 12 (1966), that the federal laws referring to "minerals" have:

> "[f]rom an early date ... been very broadly interpreted to include virtually every known substance found in the earth which has sufficient value to warrant the cost of its extraction. It is not surprising, therefore, that the Western states ... have adopted broad, all–inclusive interpretations of the term "minerals" in contrast to the sometimes narrow interpretations adopted in the midwestern and eastern states."

While the courts in Wyoming have not been called upon to determine whether a reservation or grant of "minerals" includes oil and gas, Wyoming law has always considered oil and gas to be minerals and to be part of the mineral estate. Territorial statutes enacted in 1888 grouped petroleum with other minerals. The State's Constitution also classified oil with other minerals, Section 3 of Article 15 provided for the taxation of mines and mining claims, including those for oil.

An 1895 Wyoming Supreme Court decision reviewed a criminal conviction under Section 10 of the 1888 territorial statute, the culprit having destroyed a building on an oil placer mining claim site. *Van Horn v. State,* 5 Wyo. 501, 40 P. 964 (1895). In upholding the conviction, the court repeatedly referred to the oil location as a "mining claim" and treated the land for purposes of the statute as "mineral land".

Other Wyoming state court decisions also support the rule that a reservation of "all coal and other minerals" includes oil and gas. In *State ex rel. School District No. 1 v. Snyder,* 29 Wyo. 163, 212 P. 758 (1923), the court approved the following language from *Swayne v. Lone Acre Oil Co.,* 98 Tex. 597, 86 S.W. 740:

"Oil before its extraction is a mineral and is a part of the land, and in so far as the question under discussion is concerned it is to be considered like iron, coal, lead, or other mineral substances." 29 Wyo. 163, 212 P. at 765.

In a well reasoned article dealing with this question, Prof. Kuntz supports a rule of law for Wyoming in accord with the majority approach. He reasons that both the probable intent of the parties and the development of Wyoming's petroleum resources are best served by a rule of law interpreting a grant or reservation that includes "minerals" as affecting a severance of the entire mineral estate, including oil and gas.

The article perceptively points out that the rules developed in Pennsylvania and Arkansas have gone astray by trying to find a specific intent to include a particular substance as a mineral. On the contrary, it was obvious to Prof. Kuntz that these instruments were reflecting a general intent. This general intent was:

" . . . to sever from the surface all substances presently valuable in themselves, apart from the soil, whether their presence is known or not, and all substances which became valuable through development of the arts and sciences." ([Kuntz, The Law Relating to Oil and Gas in Wyoming, 3 Wyo.L.J. 107 (1949)] p. 113). See also, *Northern Natural Gas v. Grounds*, 441 F.2d 704, 714 (10th Cir. 1971), cert. denied, 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 267 (1971).

The policy considerations in favor of this interpretation are considerable. An established rule of law provides a reliable means of ascertaining mineral ownership. This certainty is important because of the heavy investment of capital required to develop petroleum and other mineral resources. Without an established rule of law, the courts would necessarily be called upon to interpret numerous reservations. This is evident from the series of cases that result in states following Arkansas authority. With every new technology that develops a use for a particular gas or hard rock mineral, resort is made to the courts. Conservation of judicial resources is another valuable advantage of the Kuntz rule.

461 F.Supp. at 281, 282–283 [footnotes omitted].

Guild Trust, however, contends that even if the phrase "coal and other minerals", standing alone, includes oil and gas as a matter of Wyoming law, the reservation in the deed contains several references to "mines" or "mining", terms which are inappropriate to the extraction of oil and gas, and which create such ambiguity as to require the receipt of extrinsic evidence of intent. Amoco argues, on the other hand, that no ambiguity is created. The parties have relied on decisions from other states in support of their positions on this question of Wyoming law.

In our view, the existing Wyoming authority supports Amoco. The Wyoming statutory and constitutional provisions cited by the District Court include petroleum among those resources taken from "mines". We believe it significant that after the District Court rendered its decision in the case at bar, the Wyoming Supreme Court decided *Coronado Oil Co. v. Grieves*, 603 P.2d 406 (Wyo.1979). The issue in that case was whether the term "mining", as employed in a Wyoming eminent domain statute, 1–26–401, W.S.1977, includes oil and gas exploration. The Court held that "mining" includes oil and gas exploration, a construction which the Court felt was "hardly unique or expansive of that term." 603 P.2d at 411. Guild Trust argues that *Coronado Oil* is not on point, inasmuch as the issue there was one of statutory construction, rather than of interpretation of language in a deed. The importance of *Coronado Oil*, however, is that the Wyoming Supreme Court stated that its reading of the statutory term "mining" was the ordinary and natural one. While not a controlling expression of state law on the issue presented here, *Coronado Oil* is "persuasive and entitled to consideration by this Court." *City of Aurora, Colorado v. Bechtel Corporation*, 599 F.2d 382, 386 (10th Cir. 1979). If the Wyoming Supreme Court were present-

ed with the precise issue presented in this case, we believe it would hold that the deed term "other minerals" includes oil and gas as a matter of law, notwithstanding the references to "mines" or "mining" contained in the reservation.

Guild Trust also contends that in several respects it did not receive a fair trial. It complains that the District Court denied certain discovery requests, set unreasonable deadlines, rushed Guild Trust to trial, and permitted Amoco to change the issues just before trial. We hold that Guild Trust was not deprived of a fair trial.

Early in the proceedings, Guild Trust knew that the controlling legal issue was whether the Railroad reserved the oil and gas under the 1909 deed. In a memorandum filed November 30, 1977–slightly in excess of one month after the complaint was filed, and almost six months before trial–Guild Trust argued that "liquid hydro–carbons were not included within the word 'minerals'" in the deed, and that "the words of the reservation can only be interpreted in light of what the parties contemplated at the time of the purported reservation taking into account all of the facts and circumstances then existing." In a memorandum filed December 1, 1977, Amoco argued to the contrary, that "a general grant or reservation of 'minerals', whether or not accompanied by a reference to specific minerals such as coal, unambiguously includes oil and gas."

■ On April 5, 1978, six weeks before trial, the District Court granted Amoco's motion to amend the complaint to plead a quiet title count. Amoco's title to the oil and gas was then squarely put at issue, if it had not been at issue before. There was no abuse of discretion in permitting the amendment.

■ The pretrial order recites that, "Defendants maintain that the reservation of coal and other minerals did not reserve the oil and gas and that defendants, as the owners of the surface, are the owners of these deposits as well." Guild Trust filed a lengthy trial memorandum in which it ar-

gued in excess of 200 pages that the Wyoming courts would view the reservation language as ambiguous and would resort to extrinsic evidence of intent.

From beginning to end, Guild Trust has defended the suit on the same legal argument urged on appeal. Accordingly, Guild Trust had adequate time to develop its argument to exhaustion, and it did so. Guild Trust's contention that it did not have a sufficient opportunity to gather extrinsic evidence of the intent behind the language of the deed is not relevant, inasmuch as the District Court ultimately ruled that the deed language was unambiguous and that extrinsic evidence of intent would not be allowed. We, of course, agree with the District Court's reasoning.

WE AFFIRM.