Adele K. FRIEDMAN et al., Petitioner,

v.

TEXACO, INC. et al. Respondent.

No. C–1978.

Supreme Court of Texas.

June 5, 1985.

Rehearing Denied July 10, 1985.

Perkins, Oden, Warburton, McNeill & Adami, Mark R. Paisley, Alice, Cox and Smith, Eugene B. Labay, San Antonio, Kleyberg, Dyer, Redford and Weil, Harvey M. Weil, Corpus Christi, for petitioner.

Oliver J. Butler, Jr., Brownsville, for respondent.

SPEARS, Justice.

This is an appeal from a declaratory judgment that the surface owners of a 694-acre tract in McMullen County own the uranium on the tract. The court of appeals affirmed. We also affirm, holding that this court's opinion in *Moser v. United States Steel Corp.*, 676 S.W.2d 99 (Tex.1984), prospective in application only, applies only to those severances of the surface and mineral estates occurring after June 8, 1983.

In 1939, Adele K. Friedman and her mother leased the oil, gas and other minerals on the land to Magnolia Petroleum Company, predecessor of Mobil Oil Corporation. In 1959, Friedman and her husband conveyed the land to T.J. Martin, subject to a mineral reservation. The deed expressly reserved the right, title and interest in "the oil, gas and other minerals, in and under said tract of land...." The deed contained no definition of "other minerals" or other indication as to what "other minerals" included. In 1977, Martin entered into a mining lease with Texaco, Inc. The leased substances expressly included uranium.

Friedman and her husband brought suit in district court for a declaratory judgment that the 1959 deed from Friedman to Martin conveyed no interest in uranium. Martin and Texaco counterclaimed that the uranium is part of the surface estate. Several royalty interest owners were also involved in the trial court, but have not appealed to this court.

The jury found that the uranium deposits began at a depth of 20 feet below the surface, that extraction of the uranium could be accomplished by strip-mining or open-pit mining, that these methods of extraction were reasonable methods of extraction, and that the extraction of uranium from beneath the surface would entail the substantial consumption, depletion, or destruction of the surface of the tract.

Based on the jury verdict, the trial court ruled in favor of Martin and Texaco that the uranium was conveyed to Martin in the 1959 deed as part of the surface estate. The court of appeals affirmed. *Storm Associates, Inc. v. Texaco Inc.*, 645 S.W.2d 579 (Tex.App.1984). While the court of appeals held that uranium compounds are minerals scientifically, geologically, and practically, it affirmed based on the rules announced by this court in *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971), *Reed v. Wylie*, 554 S.W.2d 169 (Tex.1977), and *Reed v. Wylie*, 597 S.W.2d 743 (Tex.1980).

In *Acker*, this court held that unless a contrary intention is expressed, a reservation of minerals should not be construed to include a substance that must be removed by a method that will consume or deplete the surface. In the first and second *Reed* opinions, we expanded the *Acker* approach and set out factual determinations to be made to determine if a substance is part of the mineral or surface estate.

Subsequent to the court of appeal's opinion in this case, this court issued its opinion in *Moser v. United States Steel Corp.* We held that "a severance of minerals in an oil, gas and other minerals clause includes all substances within the ordinary and natural meaning of that word, whether their presence or value is known at the time of severance." We further held that "uranium is a mineral within the ordinary and natural meaning of the word...." 676 S.W.2d at 102. Because of public reliance on *Acker* and *Reed*, we held that the rules announced in *Moser* "are to be applied *only prospectively* from the date of our original opinion, June 8, 1983." 676 S.W.2d at 103 (emphasis added).

The problem in this case is that at the time Friedman conveyed the surface estate to Martin in 1959, the *Acker* and *Reed* opinions had not been written. Thus, Friedman argues that the rules announced in *Moser* should apply at the time of her conveyance, and that therefore, she owns the uranium as the mineral estate owner. However, at the time of Martin's mineral lease to Texaco, in 1977, this court had written its opinion in *Acker* (1971), and that same year, 1977, issued its opinion in *Reed.* Thus, Texaco urges that it had a right to rely on those decisions when it entered into its lease with Martin.

In neither the *Acker* opinion nor the *Reed* opinions did we state that the holdings were to be prospective in application. Furthermore, we did not purport to change the law in *Acker*, and our opinions in the *Reed* cases were extensions of the rule set out in *Acker*. The surface destruction test was not a new concept. As early as 1949 this court held that surface destruction was a factor in determining whether a substance was included in a conveyance or reservation of "minerals." *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 998 (1949).[1]

1. The *Heinatz* court stated that:

Another reason supports the conclusion that the words "the mineral rights" used in the will were not intended to include the right to the limestone. It is that the limestone is recoverable only by quarrying or the open pit method which destroys the surface for agricultural and grazing purposes. The fact that the particular substance, although technically a mineral, is recoverable only in this way, and with this result, is not decisive of the question, but it is a factor which is used with others in determining that the substance is not included in a conveyance or reservation of minerals.

Friedman insists that even if *Moser* cannot be applied retroactively, that she at least had a right to rely on the law in effect at the time of her conveyance to Martin. The only case prior to *Acker* specifically dealing with uranium is *Cain v. Neumann*, 316 S.W.2d 915 (Tex.Civ.App.—San Antonio 1958, no writ). *Cain* did not purport to announce a rule that uranium would always be included in a conveyance of "other minerals." Rather, the decision that uranium was included in a particular mineral lease was based on an examination of special provisions in that lease. 316 S.W.2d at 922. Further, as we have previously noted in *Acker*, there is no indication in *Cain* whether mining the uranium would destroy the surface. *See Cain*, 316 S.W.2d at 921–22, *reviewed by Acker*, 464 S.W.2d at 352. We conclude that the Texas law on whether uranium was included in a conveyance or reservation of "minerals" was unsettled prior to our decision in *Acker*, and no definitive rule existed.

We therefore hold that with respect to uranium, the rules of *Acker* and *Reed* will apply to determine the effect of severances of "other minerals" from the surface estate for severances prior to June 8, 1983. These rules will apply even in cases where there has been no reliance on *Acker* and *Reed* because the minerals conveyed in a pre-*Acker* severance should not depend on the fortuitous event of reliance on subsequent law by a subsequent lessee or purchaser. For severances of "other minerals" from the surface after June 8, 1983, title to uranium will be determined by the rules announced in *Moser*. If mineral and surface estates severed prior to June 8, 1983 have merged, and are subsequently reserved after June 8, 1983, the rules announced in *Moser* will apply thereafter.

Applying the rules to this case, the rules of *Acker* and *Reed* control the title to uranium under the 1939 lease of "oil, gas, and other minerals" from Friedman to Magnolia. Therefore, in accordance with the jury findings, the uranium did not pass

217 S.W.2d at 998.

to Magnolia under this lease, but was retained by Friedman, and was later conveyed to Martin under the 1959 deed. Thus Friedman has no interest in the uranium.

Accordingly, the judgments of the trial court and the court of appeals are affirmed.

RAY, J., dissents, in which McGEE, J., joins.

RAY, Justice, dissenting.

I respectfully dissent. The majority opinion represents yet another attempt to harmonize the recent line of cases which deal with the question of what constitutes a mineral for purposes of reserving or conveying "oil, gas and other minerals." *See Moser v. U.S. Steel Corp.*, 676 S.W.2d 99 (Tex.1984); *Reed v. Wylie*, 597 S.W.2d 743 (Tex.1980); *Reed v. Wylie*, 554 S.W.2d 169 (Tex.1977) (*Reed I*); *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971). This line of cases is irreconcilable and with each attempt to rectify our prior mistakes, we only compound the problem. This time, the majority attempts to correct the mistake at the expense of the Friedmans, who are the legitimate owners of the uranium.

The law should be concerned about the rights of the Friedmans as well as those of Texaco. When the Friedmans conveyed the surface estate in 1959, *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994 (1949), governed the question of what constitutes a mineral. In that case, this court held that the term "minerals" is comprised of all substances "within the ordinary and natural meaning of the word." *Id.* at 997. Also, the case of *Cain v. Neumann*, 316 S.W.2d 915 (Tex.Civ.App.—San Antonio 1958, no writ) predated the 1959 conveyance. That case, written by Chief Justice Pope before his tenure on this court, holds that uranium is a mineral covered by an "oil, gas, coal and other minerals" lease. *Id.* at 922. Thus, in 1959 when the Friedmans conveyed the surface estate and retained the mineral estate, the uranium was

part of the mineral estate and owned by the Friedmans.

Consequently, T.J. Martin did not possess the right to convey uranium or any other mineral to Texaco in 1977. The cases that Texaco purportedly relied on when it entered into its 1977 lease, *Acker v. Guinn* and *Reed* I, do not concern uranium. In my opinion, the case law precedent is stronger for the Friedman's position than it is for Texaco. The majority has taken the Friedmans' property and awarded it to Texaco without compensating the Friedmans, whom I believe to be the true owners of the minerals.

I also oppose the majority opinion because it bases the determination of whether uranium is a mineral on the severance date of the surface and mineral estates. On the one hand, if a severance takes place after June 8, 1983, then the uranium is part of the mineral estate. On the other hand, if the severance occurred before June 8, 1983, then the status of uranium depends upon the fact findings required by *Acker* and *Reed*. Consequently, for the vast majority of surface and mineral estate severances, a great deal of uncertainty remains with respect to the title of uranium. In my opinion, it is essential for surface estate and mineral estate owners to be able to rely on a title examiner's opinion regarding the ownership of uranium. Under the majority opinion, however, a title examiner cannot safely determine title to uranium in a pre-June 8, 1983 severance, unless the surface estate and mineral estate owners resort to litigation.

Accordingly, I would hold that uranium is and always has been a mineral. As Justice Spears opined in his concurrence in *Reed* II: "Whatever the rule, it should be such that the ownership of the substance in question can be ascertained from examining the instrument of grant or reservation alone." 597 S.W.2d 743 at 751. While the rule that I espouse accomplishes certainty of title, the majority's rule fails to achieve this goal. Thus, I would reverse the judgments of the lower courts and render judgment that the Friedmans own the uranium on this tract of land.

McGEE, J., joins in this dissenting opinion.