Thomas W. CREWS, Sr. and Dorothy W. Crews, and URI, Inc., Appellants,

v.

PLAINSMAN TRADING COMPANY, Appellee.

No. 04-91-00260-CV.

Court of Appeals of Texas, San Antonio.

March 11, 1992.

Rehearing Denied March 11, 1992.

Homer E. Dean, Jr., Tracy L. Spoor, Dean & Hunt, P.C., Alice, J.W. Cooper, Jr., Cooper and Cooper, Corpus Christi, for appellants.

Kenneth R. Hannam, Mahoney, Shaffer & Layton, Corpus Christi, for appellee.

Before CHAPA, BIERY and GERALD T. BISSETT,[1] JJ.

## ON APPELLANTS' AND APPELLEE'S MOTIONS FOR REHEARING

GERALD T. BISSETT, Justice. (Assigned).

The opinion of this court dated January 22, 1992 is withdrawn and this opinion is substituted therefor.

This is an appeal from a summary judgment rendered in favor of Plainsman Trading Company in a suit for a declaratory judgment to determine the ownership of an undivided one-half (½) of the uranium underlying a tract of 1,956.7 acres of land in Duval County, Texas. We reverse and remand.

Thomas W. Crews and wife, Dorothy W. Crews, hereafter "Crews," the surface owners of the 1,956.7 acres and the owners of the remaining one-half (½) of the uranium (and other minerals) underlying the land filed suit against Plainsman Trading Company, hereafter "Plainsman," the purported owner of an undivided one-half (½) of the uranium in and under the land, certain named persons who were purported owners of non-participating royalties, and against Uri, Inc., hereafter "Uri," who is the successor in interest to the original lessor in a uranium lease theretofore executed by the Crews, as lessors, covering the land. Plainsman then filed a counterclaim against Crews and Uri, seeking a declaratory judgment that it owned an undivided one-half (½) of the uranium on, in and under the land. Plainsman based its claim on a reservation contained in a deed dated March 14, 1963 from Cattle Land Oil Company and O.S. Wyatt, Jr., as grantors, to Thomas W. Crews, as grantee, whereby the 1,965.7 acres were conveyed to the grantee. The deed expressly reserved unto the grantors, their heirs, successor and assigns, "an undivided one-half (½) of the minerals in and under said land." The conveyance will henceforth be referred to as "the Deed," and the land conveyed

thereby will be referred to as "the Crews' Property."

Both Crews and Plainsman filed motions for summary judgment. Uri did not file such motion, but did align itself with and actively supported Crews in their motion.

Crews alleged in their motion: 1) uranium deposits located on, in and under the Crews' Property are within 200 feet of the surface of the land, and all such "near surface" uranium belongs to them as a matter of law; 2) Uri has an interest in the uranium because of the existing uranium lease between them, as lessors, and Uri, as lessee; 3) open pit mining was a reasonable method of extracting uranium on March 14, 1963, the date of the Deed; and 4) both the open pits mining method and the in situ (solution mining) method of extracting uranium will result in substantial harm, depletion, impairment and destruction of the surface of the land for agricultural and grazing purposes.

Plainsman alleged in its motion: 1) it is the owner of an undivided one-half (½) of the uranium in and under the Crews' Property by virtue of the reservation "of the minerals in and under said land" contained in the aforesaid Deed, because the reservation is "clear and unambiguous"; and 2) there is no genuine issue of material facts necessary to establish its title and ownership of its one-half (½) of the uranium and uranium rights in and under the land.

The trial court denied Crews' motion and granted Plainsman's motion. The Crews' have appealed from the judgment denying their motion for summary judgment, and they and Uri have appealed the judgment granting Plainsman's motion.

The action brought by Crews against the purported owners of non-participating royalties was severed from their action brought against Plainsman and Uri. Therefore, the summary judgment, signed on April 18, 1991, which held that Plainsman is the owner of an undivided one-half (½) in and to all uranium, including but not

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

limited to, uranium, thorium, vanadium and molybdenum, in, on and under the Crews' Property, is a final judgment.

■ When both plaintiff and defendant file motions for summary judgment and *one* motion is granted, and the other is denied, the trial court's judgment becomes final and appealable. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988); *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958).

■ When both parties move for summary judgment, each party must carry his own burden as movant, *James v. Hitchcock Indep. School Dist.*, 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied), and all of the summary judgment evidence accompanying both motions should be considered by the trial court in deciding whether or not to grant either party's motion. *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex.1969); *Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 605 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). However, the trial court must indulge all reasonable inferences and resolve all doubts in favor of the losing party. *University of Texas Health Science Center v. Big Train Carpet of El Campo, Inc.*, 739 S.W.2d 792 (Tex.1987). Under TEX. R.CIV.P. 166a, a summary judgment may be rendered only if the pleadings, depositions, admissions and affidavits show 1) that there is no genuine issue as to any material fact, and 2) the moving party is entitled to judgment as a matter of law. *See also, MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986). As said in *Futch v. Greer*, 353 S.W.2d 896, 898–99 (Tex.Civ. App.—Amarillo 1962, writ ref'd n.r.e.), *cert. denied*, 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721 (1963), quoted by the supreme court in *DeBord:*

> We do not construe Rule 166–A, Texas Rules of Civil Procedure as requiring that a motion for summary judgment can be controverted only by affidavits specifically replying to such motion. In our opinion appellees' own motion for summary judgment supported by affidavits and exhibits attached thereto, together with the deposition of appellee . . ., con-

stituted sufficient opposition to appellants' motion.

*DeBord*, 446 S.W.2d at 301. We therefore, consider all of the summary judgment evidence presented by both appellants and appellees in deciding whether a correct judgment was rendered by the trial court.

■ Crews contend in their first point of error:

> The trial court erred in denying summary judgment to Crews as surface owner that the uranium underlying Crews land within 200 feet of the surface belongs to Crews as surface owner as a matter of law under the surface destruction test of the Texas Supreme Court where the general terms 'minerals' was used in a 1963 deed reservation.

Both the Crews' and Uri contend that the trial court erred: 1) in ruling that the term "minerals" as used in the deed includes uranium, uranium ore and uranium rights; and 2) in granting Plainsman's motion for summary judgment for the reason that there exists a genuine issue of material fact.

The trial court had before it at the hearing certain stipulations and summary judgment evidence in the form of a certified copy of the Deed, and depositions and affidavits attached to the motions by Crews and Plainsman, the responses by each of them to the others' motions, and a response filed by Uri to Plainsman's motion.

It was stipulated by all parties to the litigation: 1) that commercial grade and quantity of uranium is located on the Crews' Property at depths ranging generally from 150 to 190 feet in depth below the surface of the grounds; 2) that open pit mining of uranium destroys the surface; and 3) that the reservation in the Deed is "clear, complete and unambiguous." It is also shown that Plainsman is the successor in interest to the grantors in the Deed and that Uri is the successor in interest to Uranium Resources, Inc., the original lessee in the aforesaid uranium lease of the Crews.

The Crews' and Uri's summary judgment evidence consisted of the affidavits of

Thomas W. Crews, William M. McKnight, a geologist and Chief Operating Officer of Uri, and Robert B. Smith, a geologist. They also presented portions of depositions from Mr. McKnight and Mr. Smith. Mr. Crews testified that he had examined in situ mining operations then being conducted on land adjoining the Crews' Property, and open pit mining operations on lands in McMullen County, and that both mining operations would substantially destroy the surface of his land. Mr. McKnight stated in his affidavit that, based upon his examination and study of the well logs and other available data on the Crews' Property, he had determined that commercial grade and quantity uranium ore resources are found thereon at depths ranging between 150 feet and 190 feet in depth; that open pit mining is, technically, a reasonable method of extracting and producing the uranium underlying the Crews' Property; that it is economically feasible to mine the uranium by open pit mining; that such a mining method will destroy the surface; that on March 14, 1963, open pit mining was the only method utilized in South Texas for the mining of uranium; that the "in situ leach" or solution mining was first used in South Texas in 1975; and whether either open pit mining or solution mining methods are employed in extracting uranium ore, the surface of the Crews' Property will be substantially harmed, injured, consumed, depleted or destroyed. To the same effect is the affidavit of Mr. Smith. Mr. McKnight, however, testified in his deposition that the open pit mining method would not be reasonable under the "1989 Uri average blending costs"; that the reasonable method of mining uranium ore (in 1989) would be by the solution method which would cause less damage to the surface than the open pit method, and while the surface would be damaged, it would not result in total destruction of the surface.

Plainsman, in its motion for summary judgment, in addition to attaching the Deed to its motion as an exhibit, also referred the trial court to "all the pleadings, affidavits, depositions and the answers to all discovery matters now on file." It also presented deposition testimony of Edward L. Oakes, a mining engineer, who stated that he had made a study of the Crews' Property, and in his opinion, open pit mining was not feasible because the extraction of uranium by the "in situ" process would be less costly than extraction by the open pit process; and that in situ, or solution mining, will not destroy the surface of the land.

Crews and Uri contend in their briefs that the reservation of "the minerals" in and under the Crews' Property, having been made in a Deed executed prior to June 8, 1983, the date of the first opinion in *Moser v. United States Steel Corp.*, 676 S.W.2d 99 (Tex.1984) must be construed in accordance with the rules of *Acker v. Guinn*, 464 S.W.2d 348 (Tex.1971); *Reed v. Wylie*, 554 S.W.2d 169 (Tex.1977) ("Reed I"), and *Reed v. Wylie*, 597 S.W.2d 743 (Tex.1980) ("Reed II").

Plainsman contends that the reservation of "an undivided one-half (½) of the minerals in and under said land," as stated in the Deed, is clear and unambiguous, and, therefore, the "surface destruction test" is not applicable. Consequently, it is the owner of an undivided one-half (½) of the uranium as a matter of law as determined by the trial court.

The question presented in *Acker* was whether an interest in the iron ore passed to the grantee in a deed executed in 1941 and purporting to convey "an undivided ½ interest in and to all of the oil, gas and other minerals in and under, and that may be produced from" a certain tract of land. The iron ore deposits varied in thickness from a few inches to three or four feet and ranged in depth to as much as fifty feet below the surface. The court concluded that iron ore was not conveyed by the deed because removal of the iron ore would consume or deplete the surface; it held:

Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of 'minerals' or 'mineral rights' should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate.

*Acker,* 464 S.W.2d at 352. The law announced in *Acker* has been described as the "surface destruction test." The rationale was that the parties to a mineral reservation (or grant) did not generally intend the minerals to be reserved (or granted) if the mining of those minerals would destroy the surface and thus deprive the owner of the use of his land.

The Texas Supreme Court reaffirmed the rule laid down in *Acker,* when it decided *Reed I* in 1977. In that case, the reservation was made in a deed, dated September 30, 1950, wherein there was reserved to the grantors "a one-fourth (¼) interest in and to all oil, gas and other minerals on or under" the land conveyed. The issue was whether the reservation reserved to grantor a one-fourth (¼) interest in coal and lignite, and it was stated:

> *Acker v. Guinn* stands for the rule that a substance is not a 'mineral' if substantial quantities of that substance lie so near the surface that the production will entail the stripping away and substantial destruction of the surface. That being the circumstance, and there being no contrary affirmative expression in the instrument, it controls the construction of the instrument as to the same substance at all depths.
>
> It is improper therefore to declare that the surface owner is entitled to only so much of the substance as may be produced by strip mining or pit mining. We are not dividing the right to produce the substance; we are construing the instrument of conveyance to ascertain the ownership of the substance. Furthermore, the rule of construction does not favor the surface owner simply because it is shown that the substance 'may' be produced by strip or pit mining. Instead, the surface estate owner *must* prove that, as of the date of the instrument being construed, if the substance near the surface had been extracted, that extraction would necessarily have consumed or depleted the land surface. (Emphasis added.)

*Reed,* 554 S.W.2d at 172.

The supreme court, in deciding *Reed II,* modified some of the rules and the test set out in *Reed I,* and stated:

> [t]hat portion of *Reed* which would require that the near surface 'must' be removed by surface destruction methods is overruled.
>
> . . . .
>
> The test now is whether any reasonable method, including such a method as of the date of this opinion (March 19, 1980), of removal of the lignite, coal or iron will consume, deplete or destroy the surface.
>
> . . . .
>
> A deposit which is within 200 feet of the surface is 'near surface' as a matter of law. . . .

*Reed,* 597 S.W.2d at 747–48 (footnote omitted).

The supreme court reviewed the holdings in *Acker, Reed I* and *Reed II* in *Moser,* 676 S.W.2d 99. There, at trial, the parties offered conflicting evidence on the depths of the uranium deposits and the effect its removal would have on the surface. The jury found there would have been no substantial destruction of the surface on the date the deed was executed (in 1949). The trial court held that uranium was a part of the mineral estate reserved by the grantor in the 1949 deed. The court of appeals affirmed the judgment of the trial court and the supreme court affirmed the judgments of both courts. The 1949 deed contained language reserving to the grantor:

> [A]ll of the oil, gas, and other minerals of every kind and character, in, on, under and that may be produced from said tract of land . . .

The court said that in *Acker,*

> We adopted the view that the general intent of parties executing a mineral deed or lease is presumed to be an intent to sever the mineral and surface estates, convey all valuable substances to the mineral owner regardless of whether their presence or value was known at the time of conveyance, and to preserve the uses incident to each estate.

*Moser,* 676 S.W.2d at 102. The court abandoned, in the case of uranium, the *Acker* and *Reed* approach to determining ownership of "other minerals" and held that "ti-

tle to uranium is held by the owner of the universal estate as a matter of law." *Id.* at 101.

The court held:

We now hold a severance of minerals in an oil, gas and other minerals clause includes all substances within the ordinary and natural meaning of that word, whether their presence or value is known at the time of severance.... We also hold uranium is a mineral within the ordinary and natural meaning of the word.

. . . .

[t]he rules announced in this case are to be applied only prospectively from the date of our original opinion, June 8, 1983.

*Id.* at 102–103.

Prior to the supreme court's decision in *Moser*, but while the case was on appeal from the Eastland Court of Appeals, this court delivered its opinion in *Storm Assocs., Inc. v. Texaco, Inc.*, 645 S.W.2d 579 (Tex.App.—San Antonio 1982), *aff'd* in *Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex.1985). There, Adele K. Friedman and her husband conveyed a 695 acre tract of land to T.J. Martin by a deed in 1959, which expressly reserved to themselves the right, with an interest in "the oil, gas and other minerals, in and under said tract of land." Martin executed a mining lease covering the land to Texaco, Inc. in 1977; this lease expressly included uranium. The Friedmans brought suit to determine the title and rights to uranium and associated minerals in and under the land.

This court, in affirming the trial court's judgment to the effect that the 1959 deed did not contain a fair and affirmative expression of intent to reserve uranium at or near the surface where the mining operation would destroy the surface, said that it did not read *Acker* and the *Reed* cases to mean that iron, coal and lignite are not minerals, but these cases hold that because of the proximity to the surface of these substances, and the general intention of a surface owner not to have his land destroyed, these substances were not a part of the mineral estate. This court held:

that uranium compounds as found in nature constitute minerals scientifically, geologically, and practically, and that unless the rules expressed in *Acker* and the *Reed* cases dictate otherwise, they are minerals which are conveyed or reserved in deeds or leases which purport to grant or reserve oil, gas, and other minerals.

*Storm Assocs., Inc.*, 645 S.W.2d at 584.

It was also stated by this court:

[t]he rules developed in *Acker* and the *Reed* cases refer to a general intent rather than a specific intent, unless the specific intent is found in the language of the instruments of conveyance; and this is so as a matter of law. By refusing to give the requested special issues, the trial court effectively found that, as a matter of law, the language of the 1959 deed contained no fair and affirmative expression of intent to reserve uranium at or near the surface, recovery of which would destroy the surface....

*Id.* at 585.

The supreme court, in affirming the judgment of the trial court and of this court in *Storm Assocs., Inc.*, stated:

In neither the *Acker* opinion nor the *Reed* opinions did we state that the holdings were to be prospective in application. Furthermore, we did not purport to change the law in *Acker*, and our opinions in the *Reed* cases were extensions of the rule set out in *Acker*. The surface destruction test was not a new concept. As early as 1949 this court held that surface destruction was a factor in determining whether a substance was included in a conveyance or reservation of 'minerals.' *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 998 (1949)....

*Friedman*, 691 S.W.2d at 588 (footnote omitted).

The supreme court held:

[t]hat with respect to uranium, the rules of *Acker* and *Reed* will apply to determine the effect of severances of 'other minerals' from the surface estate for severances prior to June 8, 1983. These rules will apply even in cases where there has been no reliance on *Acker* and *Reed* because the minerals conveyed in a pre-*Acker* severance should not depend

on the fortuitous event of reliance on subsequent law by a subsequent lessee or purchaser. For severances of 'other minerals' from the surface after June 8, 1983, title to uranium will be determined by the rules announced in *Moser*. If mineral and surface estates severed prior to June 8, 1983 have merged, and are subsequently reserved after June 8, 1983, the rules announced in *Moser* will apply thereafter.

*Id.* at 589.

Plainsman relies upon *Schwarz v. State*, 703 S.W.2d 187 (Tex.1986), as authority for its contention that we are not required to follow the rules announced in *Acker* and the *Reed* cases in disposing this appeal because there are other rules of construction that show intent of the parties to include the reservation of one-half (½) of the uranium under the land in the Deed. They base their contention on the following statement in *Schwarz:*

> If there is an express conveyance of a specific substance, or some other controlling rule of construction indicating a different intent, we are not bound to follow the *Acker* and *Reed* presumption.

*Id.* at 189.

They argue: 1) that the Deed is unambiguous, and since uranium is a mineral as a matter of law, that the reservation in the Deed necessarily included uranium; 2) if it be determined that the language in the Deed is ambiguous, the true test is what the word (minerals) means in the vernacular of the mining world, commercial world and landowners' world at the time of the reservation, as held in *Psencik v. Wessels*, 205 S.W.2d 658, 661 (Tex.Civ.App.—Austin 1947, writ ref'd) and *Winsett v. Watson*, 206 S.W.2d 656, 657 (Tex.Civ.App.—Fort Worth 1947, writ ref'd), noting that in *Cain v. Neumann*, 316 S.W.2d 915, 922 (Tex.Civ. App.—San Antonio 1958, no writ), uranium was stated to be a mineral; 3) another rule of construction in determining the meaning of a word is to use their ordinary and natural meaning, as stated in *Heinatz v. Allen*, 147 Tex. 512, 217 S.W.2d 994, 997 (1949); and 4) another rule of construction

which predates *Acker* is set forth in *Psencik*, as follows:

> [t]he general rule in the abstract has been deduced that a conveyance or exception of 'minerals' in a deed, lease, or license includes all mineral substances which can be taken from the land, and to restrict the meaning of the term there must be qualifying words or language evidencing that the parties contemplated something less than all substances legally cognizable as minerals ...

*Psencik*, 205 S.W.2d at 660 (citation omitted).

Plainsman further contends that the language of the grants or reservation in *Acker*, the *Reed* cases, and subsequent cases that follow them was "oil, gas and other minerals in and under the land," as distinguished from "the minerals under the land," and the courts were trying to construe the words "other minerals." It argues that the difference between "oil, gas and other minerals," though slight, is significant to the reader because such works imply that "other minerals" alone do not give rise to an impression that "the minerals" will be mined through wells. We do not agree. We do not perceive any distinction between the use of the words "oil, gas and other minerals" and the words "the minerals." Each phrase means all minerals of every kind and character in and under the land. *See Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 54 (Tex.1964), where the supreme court refused to employ the *ejusdem generis* rule of construction to limit the language "oil, gas and other minerals" to hydrocarbons.

While Plainsman's contentions are reasonable and plausible, the summary judgment cannot be upheld on any of the theories advanced by it. To so hold would require us to ignore the rules laid down by *Acker* and the *Reed* cases. Those rules apply to this case since the Deed was executed prior to June 8, 1983, the date of the first opinion in *Moser*. *Schwarz* does not control the disposition of this appeal since the grantor was the State of Texas, and the history of the passage of the several laws

by the legislature reveals an intent to reserve all minerals to the State; therefore, it was held that the "presumed intent" in *Acker* and the *Reed* cases would not apply. *Wojtasczyk v. Burns*, 744 S.W.2d 354, 356 (Tex.App.—Corpus Christi 1988, no writ), which held that the reservation by the grantor of one-fourth of "all minerals and mineral rights in and to the above described land" included uranium, is also relied upon by Plainsman. The reliance is misplaced. The deed in *Wojtasczyk* contained more than just a reservation of one-fourth (¼) of all minerals; it also specifically provided for the compensation to the surface owner for the reasonable market value of the land reasonably necessary to the taking of the minerals, which reflected that the parties contemplated that minerals such as uranium would be extracted by methods destructive to the surface. The Deed before us in this appeal does not so provide.

Accepting the facts that: 1) the Deed was executed prior to June 8, 1983; 2) that substantial quantities of uranium are found at less than 200 feet below the surface; 3) that such substances are "near surface" as a matter of law; 4) that open pit mining is a reasonable method of mining; and 5) that such a method will destroy the surface, questions remain as to whether solution mining is a reasonable method of mining uranium under the surface of the Crews' Property and whether such mining will substantially damage or destroy the surface of the land.[2] These questions are question of fact which preclude the granting of summary judgment to Plainsman. The surface owner, in this case Crews, will prevail if it is proven that the uranium is at the "near surface" (200 feet or less), and *any reasonable method* of extraction will consume, deplete, or destroy the surface, including such a method as of date of trial. *See Reed II*, 597 S.W.2d at 747.

■ *Acker* and the *Reed* cases control the disposition of this appeal. Accordingly, we hold that the Deed does not affirmative-

ly and fairly express an intention to reserve one-half (½) of the uranium in and under the Crews' Property. *Friedman*, 691 S.W.2d at 586.

The trial court correctly denied Crews' motion for summary judgment and incorrectly granted Plainsman's motion for summary judgment. This is so because the summary judgment evidence before the trial court shows that there is a dispute concerning two issues of fact, which can only be resolved by a trial on the merits. They are: 1) whether solution mining is a reasonable method of extracting uranium from the Crews' Property; and 2) whether solution mining would consume, deplete or destroy the surface of the land.

The judgment of the trial court is reversed and the cause is remanded for further proceedings.

---

**2.** It was undisputed in the *Moser* case that at the time of affirmance by the Eastland Court of Appeals on June 18, 1980, as contrasted to February 24, 1949, the date of the deed, that the land would be mined by the solution mining method. *See Moser v. United States Steel Corp.*, 601 S.W.2d 731, 733 (Tex.Civ.App.—Eastland 1980), *aff'd*, 676 S.W.2d 99 (Tex.1984).