**PLAINSMAN TRADING COMPANY; Evelyn Elliott; Shirley Hill; June Nabb; Jimmie Ruth Picquet; Travis S. Richardson; Janie Smith; Martha Tiller; John Allen Richardson; Estate of Jean Magee; Estate of Joyce Davis Ondrusek; and Estate of Floy D. Willoughby, Appellants,**

v.

**Thomas W. CREWS, Sr. and Dorothy Crews, Appellees.**

No. 04–93–00583–CV.

Court of Appeals of Texas, San Antonio.

April 13, 1994.

Rehearing Denied May 3, 1994.

Kenneth R. Hannam, Shaffer, Layton, Hannam & Luna, Corpus Christi, John Howard Burris, Burris & Burris, Alice, Timothy Patton, Pozza & Patton, San Antonio, for appellants.

J.A. Canales, Canales & Simonson, P.C., J.W. Cooper, Jr., Cooper and Cooper, Corpus Christi, for appellees.

Before CHAPA, C.J., and BUTTS and RICKHOFF, JJ.

CHAPA, Chief Justice.

This is an appeal from a trial court's determination of the ownership of uranium underlying a certain tract of land in Duval County. The issues before this court are:

1) whether the trial court erred in submitting a jury charge allegedly containing numerous errors; and,

2) whether the surface destruction test governs the ownership of royalties from minerals that attach to the surface estate.

## FACTS

Appellees, Thomas and Dorothy Crews, own the surface and one-half of the minerals underlying a tract of land composed of nearly 2000 acres. They sought a declaratory judgment of ownership of all the uranium underneath the surface estate. Plainsman Trading Company, which owned the other one-half interest in the mineral estate, filed a countersuit, seeking a declaratory judgment of its ownership of one-half of the uranium. Summary judgment was granted in favor of Plainsman, but was reversed and remanded by this court due to the existence of outstanding fact issues. *See Crews v. Plainsman Trading Co.,* 827 S.W.2d 455 (Tex. App.—San Antonio 1992, writ denied).

The case went to trial before a jury. The Crews based their claim to all the miner-

als on the surface destruction test. The doctrine, which deals with ambiguous conveyances, presumes that a severance of "other minerals" from the surface estate does not include substances that might otherwise be considered minerals but actually form a part of the surface estate because they lie near the surface and can only be extracted by destroying the surface estate. *See Acker v. Guinn,* 464 S.W.2d 348, 352 (Tex.1971); *Reed v. Wylie,* 554 S.W.2d 169, 172 (Tex.1977) (Reed I); *Reed v. Wylie,* 597 S.W.2d 743, 747–48 (Tex.1980) (Reed II). The jury found that any reasonable method of extracting and producing the uranium would deplete or destroy the surface estate. Hence, the court entered a judgment holding that the Crews, as owners of the surface estate, also owned all the uranium underneath their land.

In the same lawsuit, the Crews also sued the successors of a ½₂ nonparticipating royalty interest that was created from a deed reservation before the Crews acquired an interest in the land. The successors of the royalty interest collectively referred to themselves as the "Richardson Heirs." They filed a counterclaim, seeking declaratory judgment that their right to royalties from uranium production was undisturbed by the dispute between the owners of the surface and mineral estates. The determination of their rights was settled by the trial court, which found that the Richardson Heirs had no interest in the uranium and thus had no right to receive royalties from production.

From this judgment, Plainsman Trading Company and the Richardson Heirs perfected their appeal.

## PLAINSMAN TRADING COMPANY'S APPEAL

We first examine the complaints of Plainsman Trading Company. In the present case, Plainsman's interest in the mineral estate was created by a reservation of "an undivided one-half (½) of the minerals in and under said land." Because the reservation fails to define minerals explicitly, we turn to legal cannons of construction to ascertain the parties' intent concerning what constitutes a mineral. In this instance, the surface destruction test is applicable because the reservation creating the mineral interest is found in a 1963 deed. *See Moser v. United States Steel Corp.,* 676 S.W.2d 99 (Tex.1984).[1] Under the surface destruction test, one must ask whether any reasonable method of removing a mineral substance will consume, deplete, or destroy the surface. *Reed,* 597 S.W.2d at 747. When the reservation fails to clearly define the term "mineral," it is presumed the parties intended for the surface estate holder to enjoy his or her interest, thus making the particular substance whose extraction is destructive to the surface a part of the surface estate as a matter of law. *Id.* at 747–48.

Uranium may be mined by open pit mining (also known as strip mining) or solution mining.[2] It was stipulated among the parties that uranium existed within 200 feet of the surface and that open pit mining is destructive to the surface. At trial, the jury was asked to determine whether "any reasonable method of extracting and producing the uranium ... would consume, deplete or destroy the surface...."

Plainsman raises five points of error challenging the court's charge. First, it asserts that the court improperly defined "reasonable" in reference to the methods of producing or extracting uranium. The charge read, "To be reasonable, a method [of removal] does not have to be the best technical method or the most economical method, nor does it mean that the uranium must be removed by that method."

Plainsman proceeded on the theory that open pit mining was an *unreasonable* method

1. In *Moser,* the supreme court abandoned the surface destruction test as applied to most kinds of minerals, holding that a severance of minerals "includes all substances within the ordinary and natural meaning of the word, whether their presence or value is known at the time of severance." 676 S.W.2d at 102. However, the *Moser* holding was applied prospectively. *Id.* at 103. Thus, conveyances made on June 8, 1983 or before are still affected by the surface destruction test.

2. This process involves drilling wells into the underground uranium ore body and injecting soda water to leach or dissolve the uranium. The solution is pumped to the surface for processing to extract the uranium.

of removal because, among other reasons, it had never been used in the vicinity and solution mining was cheaper, cleaner, and more profitable. The company argues that the charge essentially told the jury to ignore evidence that open pit mining was never used or that there were better methods of mining. Hence, the charge made a direct comment on the weight of the evidence.

■ We disagree that the instruction commented on the evidence. To constitute an impermissible comment, the instruction must indicate the trial judge's opinion on the truth of the matter in question. *Boyer v. Scruggs,* 806 S.W.2d 941, 947 (Tex.App.—Corpus Christi 1991, no writ); *Baker Material Handling Corp. v. Cummings,* 692 S.W.2d 142, 145 (Tex.App.—Dallas 1985, writ dism'd by agr.). The instruction above merely pointed out that a method of mining may be considered reasonable even if it is not the best method of removal. A further reading of the charge indicates that the jury was simply asked to find a method of removal reasonable if it is "technically or economically feasible," a definition which Plainsman raised no objection to.

■ Even if the instruction incidentally commented on the evidence, no error may be found. TEX.R.CIV.P. 277. A comment on the weight of the evidence does not require reversal when the force of the comment was so weak that it either was not a comment at all or was harmless. *Texaco, Inc. v. Pennzoil, Co.,* 729 S.W.2d 768, 811 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. denied,* 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). The instruction properly followed the law as set forth in *Reed v. Wylie,* 597 S.W.2d at 747, wherein the supreme court made no requirement that one must consider the best method of removal for purposes of the surface destruction test. The point is denied.

Plainsman next complains that the definition regarding reasonableness should have taken into account whether the method of removal was environmentally safe. The company acknowledges that it provides no authority supporting its contention that an instruction on environmental safety should have been included.

■ A party is entitled to a proper submission of a valid theory of recovery or a vital defensive issue when raised by the pleadings and the evidence. *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992). Plainsman insists that its pleadings and evidence raise the issue that environmental safety is a factor to consider in determining reasonableness of a mining method and thus should have been submitted to the jury.

■ Texas Rule of Civil Procedure 277 states that instructions and definitions are to be submitted to enable the jury to render a verdict. We do not think the definition in this case had to enumerate a laundry list of factors to be considered when making a determination of what method of removal is reasonable in order for the jury to render its verdict.

■ Plainsman's defensive theory that strip mining was unreasonable was submitted to the jury. The jury was asked whether the methods of mining were "technically or economically feasible." Clearly, technical and economical feasibility encompasses many considerations, including the environmental impact of a mining project. A judgment should not be reversed because of the failure to submit different shades of the same question. TEX.R.CIV.P. 278. It should be noted that determining the reasonableness of a mining method includes considering those methods that were deemed reasonable from the time the mineral interest was created to the present. *Reed I,* 554 S.W.2d at 172; *Reed II,* 597 S.W.2d at 747. Because solution mining was not used initially in south Texas until 1975, *see Crews,* 827 S.W.2d at 458, the jury may have taken into account the prevalent use of open pit mining before the advent of solution mining in reaching its verdict. The point is denied.

Plainsman next complains about how the court defined destruction in the jury charge. The charge read, "[L]and surface is considered to be 'consumed' or 'depleted' or 'destroyed' if use of the surface soil is affected to such a degree that the utility of such land surface for farming, grazing, timber production or other beneficial use is destroyed or substantially impaired...."

Plainsman argues that this definition is improper because it allows consideration of the substantial impairment of land, whereas the test regarding surface destruction as enunciated in *Reed II,* 597 S.W.2d at 747, and *Crews,* 827 S.W.2d at 462, does not refer to impairment. Moreover, the company contends that the term is vague and broad and amounts to a comment on the weight of the evidence.

We find these arguments groundless. The analysis of the surface destruction test in the cases of *Reed II* and *Crews* does not set forth an ironclad rule about how the test must be worded in a jury charge. None of the cases on this topic state that surface destruction arises only by "consumption," "depletion," or "destruction." Assuming a specific definition existed, we fail to see how the definition above could have caused the rendition of an improper judgment. *Island Recreational Dev. Corp. v. Republic of Texas Savs. Assoc.,* 710 S.W.2d 551, 555 (Tex.1986).

Furthermore, contrary to Plainsman's assertions, a reading of the jury charge as a whole reflects that "substantial impairment" does not allow for a finding of surface destruction merely because the surface damage is minor. The definition in fact helps the jury render its verdict because it shows that the various surface uses that might be destroyed by mining methods are not limited to the beneficial uses listed in the charge. TEX. R.CIV.P. 277. The point is denied.

Plainsman additionally complains that the court erred in submitting an issue on a stipulated fact to the jury. Specifically, the charge asked the jury, "Do you find from a preponderance of the evidence that the uranium located on the Tom Crews Ranch is located within 200 feet or less of the surface ...?" The company argues that because the parties stipulated that the uranium was near the surface, the submission of this issue had the effect of tilting the jury to the other side or distracting them from the issues in dispute.

We fail to see how the issue persuaded the jury to render a verdict for the other side since the depth of the uranium was treated as a secondary issue in the charge. Aside from the one sentence asking about the loca-

tion of the uranium, the remainder of the charge focused solely on whether the various methods of producing uranium would destroy the surface.

Although an undisputed issue need not be submitted to the jury by the trial court, *see Texas Employers Ins. Ass'n v. Miller,* 596 S.W.2d 621, 625 (Tex.Civ.App.—Waco 1980, no writ), we do not believe the submission of the issue in this instance caused or probably did cause the rendition of an improper verdict. This is not a situation in which the court refused to apply the law to conceded or undisputed facts. *See, e.g., Benton v. Wilmer–Hutchins Indep. Sch. Dist.,* 662 S.W.2d 696, 699 (Tex.App.—Dallas 1983, writ dism'd). The location of the uranium was peripheral compared to the more important issue of the effect of the mining methods. Moreover, the charge did not place undue emphasis on the location of uranium so as to distract the jury from the remaining issues. We particularly fail to see any harm considering the jury made a finding that harmonized with a fact stipulated by the parties. At the very most, the issue amounted to harmless surplusage. *See Texas Constr. Serv. Co. of Austin v. Allen,* 635 S.W.2d 810, 815 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). The point is denied.

Finally, Plainsman complains that the trial court erred in failing to submit separate issues concerning the two mining methods. The charge asked the jury, "Do you find by a preponderance of the evidence ... that any reasonable method of extracting and producing the uranium under the Tom Crews Ranch available on March 14, 1963 or at any time thereafter would consume, deplete or destroy the surface of the Tom Crews Ranch?"

Plainsman contends this question was confusing because the company had argued that open pit mining was destructive to the surface, whereas solution mining was not. It attempted to show that open pit mining was unreasonable and that solution mining, although reasonable, had no destructive impact on the surface. Hence, Plainsman was asserting different points about each method of mining. Plainsman insists that this demand-

ed the submission of two separate jury issues to avoid the confusing effect of a single broadly-worded issue.

Although we note that the submission of two separate issues would have made the questions in the charge more precise, we find no error in the submission of a broad-form question. This case does not present an extraordinary circumstance that demands the submission of separate issues. *See Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Under the Civil Procedure Rules, broad-form submissions are preferred whenever feasible. TEX.R.CIV.P. 277.

■ We recognize that the evidence at trial centered on two different mining methods—open pit mining and solution mining. However, we do not believe that the broad-form question had the effect of confusing the jury. The charge required the jury to weigh the evidence regarding each method to ascertain whether it was reasonable and whether it was destructive to the surface. The evidence regarding each method of mining was completely different from the other. Considering the dichotomy between the two, the jury certainly could not have confused the evidence about the different methods of production. A judgment shall not be reversed because of the failure to submit various shades of the same question. TEX.R.CIV.P. 278. Plainsman has failed to show the question caused or probably did cause the rendition of an improper verdict. *In re W.G.W.*, 812 S.W.2d 409, 417 (Tex.App.—Houston [1st Dist.] 1991, no writ). The point is overruled.

## RICHARDSON HEIRS' POINTS OF ERROR

In three points of error, the Richardson Heirs contend that the determination of who owns the uranium under the surface destruction test does not affect their royalty interests. They argue they have a right to receive royalties regardless of who owns the uranium.

They principally rely on the case of *Martin v. Schneider*, 622 S.W.2d 620 (Tex.App.—Corpus Christi 1981, no writ). The appellants, who owned the surface and mineral estate in a tract of land, sought a declaratory judgment to determine ownership of uranium. The appellees owned a nonparticipating royalty interest. The court concluded that the surface destruction test was inapplicable to royalty interests. *Id.* at 622. The court reasoned that because a nonparticipating royalty interest in minerals carries with it no right to interfere with the surface, but only a right to receive a portion of the royalties when minerals are produced, the reservation of a royalty interest was effective regardless of whether uranium belonged to the surface or mineral estate. *Id.* at 621–22.

■ The Richardson Heirs emphasize that the surface destruction test emerged to give effect to the general intent of the parties who sever mineral interests from the surface estate. As noted above, it is presumed that the grantee of a mineral interest is not given the right to destroy the surface. The Richardson Heirs contend that this rule of construction is inapplicable to reviewing the ownership of royalty interests. The royalty holder's intent with respect to the use of the surface estate is irrelevant since the owner cannot enter the surface and destroy it to extract minerals.

Although there is some rationality to these arguments, we note that the court in Corpus Christi is the only court of appeals that has taken this approach. All the courts of appeal that have dealt with this issue, including this one, have allowed the surface destruction test to govern the ownership of royalty interests.

In *Farm Credit Bank of Texas v. Colley*, 849 S.W.2d 825 (Tex.App.—Texarkana 1993, writ denied), the court of appeals concluded that a nonparticipating royalty interest is an interest in land and a part of the total mineral interest in place. *Id.* at 827. The court took into account practical considerations for not following *Martin v. Schneider*. It held that the rules set forth in the *Reed* cases should apply to all conveyances or reservations between parties concerning interests in the mineral estate. *Id.* Otherwise, if different rules applied to different kinds of mineral interests regarding the presumed intent of the parties, then confusion would abound. *Id.* Moreover, the court reasoned that departing from the surface test in such cases

could lead to unusual results. *Id.* For example, the owner of a full mineral interest in uranium could actually have a lesser estate than an owner of royalties in uranium after it is determined that the uranium belongs to the surface under the surface destruction test. Consequently, the surface destruction test must extend to all subordinate mineral interests to avoid such results.

▪ This court specifically recognized that a royalty interest merely forms a part of the mineral estate. *Storm Assocs., Inc. v. Texaco, Inc.,* 645 S.W.2d 579, 587 (Tex. App.—San Antonio 1982), *aff'd sub. nom., Friedman v. Texaco, Inc.,* 691 S.W.2d 586 (Tex.1985). In that case, we overruled the complaints of two appellants who applied the analysis of *Martin v. Schneider* and claimed their entitlement to royalties in uranium. We pointed out that the surface destruction test is meant to ascertain the intent of the parties whenever a grant or reservation of minerals is made, noting that such a conveyance presumably does not include minerals that must be removed by methods destructive to the surface. 645 S.W.2d at 587. Then, we called attention to the fact that a royalty interest is merely a component of the mineral estate. *Id.* Because royalty interests are intertwined with mineral estates generally and because we previously held that the specific mineral of uranium belonged to surface estate, we concluded that the appellants had no right to the royalties from uranium. *Id.* at 587–88. We said, "While both *Acker* and *Reed* dealt directly with ownership of minerals rather than royalty interest, we think that the general intent of the parties [that mineral rights should not be construed to include substances removable by methods that destroy the surface] would be the same." *Id.* at 587. *See also DuBois v. Jacobs,* 551 S.W.2d 147, 150 (Tex.Civ. App.—Austin 1977, no writ).

We decline to depart from our holding in *Storm Associates* and the other cases that have dealt with this question. In *Luckel v. White,* 819 S.W.2d 459, 464 (Tex.1991), the supreme court held that rules of construction applicable to mineral deeds are also relevant to royalty deeds. Because the surface destruction test is a rule of construction applicable to determining the intent of the parties concerning the conveyance or severance of mineral interests, it should likewise be applied to royalty interests. One should not be entitled to profit from the surface estate solely by virtue of his or her ownership in a component of the mineral estate. We note that our holding is limited to affirming the trial court's determination that uranium forms a part of the surface estate. The points are denied.

In three separate points of error, the Richardson Heirs also challenge the jury charge. However, because their arguments correspond with the arguments raised by Plainsman Trading Company and because we have thoroughly analyzed the relevant points, we find it unnecessary to address these additional points.

The judgment is affirmed.